# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1757EM

_____

| | | |
|---|---|---|
| Patrice Diane Greer, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Eastern District |
| St. Louis Regional Medical Center, | * | of Missouri. |
| also known as St. Louis Connectcare, | * | |
| also known as Connectcare, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 2, 2001
Filed: July 31, 2001

_____

Before MORRIS SHEPPARD ARNOLD, RICHARD S. ARNOLD, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Patrice Greer appeals the District Court's adverse grant of summary judgment in her employment discrimination case against St. Louis Regional Medical Center (Regional), her former employer. Ms. Greer was employed at Regional as a full-time, hourly paid biomedical engineering technician (BET) in the dialysis unit, where she was on call twenty-four hours a day, seven days a week. She was called in to repair equipment on her days off, including days when she was on vacation or sick leave. In

her complaint in this action, Ms. Greer alleged that Regional discriminated against her because of her race and gender, in violation of Title VII and 42 U.S.C. § 1981, and treated her differently from white male employees by: (1) requiring her to be on call and calling her in to work when she was sick or on vacation; and (2) subjecting her to less favorable terms with respect to time off and pay for overtime, travel, sickness, and being on call or called back. The plaintiff also alleged she was harassed and constructively discharged in violation of section 1981. After de novo review, see Winkle v. S.W. Bell Tel. Co., 195 F.3d 418, 420 (8th Cir. 1999), we affirm in part and reverse in part.

Regional argues first that the appeal is procedurally deficient. Regional filed, and won, three separate motions for summary judgment in the District Court. The first motion, made in June of 1999, concerned claims of harassment and constructive discharge, and argued that plaintiff had failed to exhaust those claims before the Equal Employment Opportunities Commission. The second motion, filed in October of 1999 and granted in November of that year, concerned plaintiff's claims of disparate treatment. The third motion, filed in February of 2000, concerned remaining claims of constructive discharge and racial harassment under 42 U.S.C. § 1981. Final judgment was entered on March 1, 2000. The notice of appeal, filed on March 7, 2000, specified the following as the orders or judgments being appeal: "The final judgment entered in this action on the 18th day of February, 2000; 1st day of March, 2000." We take the reference to "the final judgment entered in this action on the 18th day of February, 2000," to mean the entry of summary judgment on that date in response to Regional's third motion for summary judgment. Thus, the notice of appeal refers expressly only to the final judgment and the third summary-judgment order. It does not mention either of the first two summary-judgment orders.[1]

_____

[1] It may be significant that the notice of appeal was on a form supplied to this pro se litigant by the District Court's Clerk's office. This form contains no space to enter anything as a judgment or order appealed from other than the final judgment disposing

Fed. R. App. P. 3(c) requires a notice of appeal to "designate the judgment, order, or part thereof appealed from." Fed. R. App. P. 3(c)(1)(B). Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment. Orders granting summary judgment on fewer than all claims are not immediately appealable. Review must await a final judgment disposing of all claims and, normally, attended by the formalities specified in Fed. R. Civ. P. 58. Thus, there is no question that the notice of appeal here is timely. The only question is whether it brings up for review the first two summary-judgment orders. Regional, when reading the notice of appeal, might have thought that the only summary-judgment order contested was the third one, but it does not claim that it took any detrimental action in reliance on such an impression, and plaintiff's brief, when filed, does argue her disparate-treatment theory (the subject of the second summary-judgment order), though it does so inartfully.[2] We do not think that the rules specifying the contents of notices of appeal should be interpreted strictissimi juris, especially in dealing with pro se litigants, where the appellee shows no prejudice. In addition, the judgment entered on March 1 recites, as its basis, the fact that "summary judgment has been ordered against the plaintiff on all counts of her complaint . . .." App. 279. It is fair to interpret this language as incorporating the three summary-judgment orders previously entered. Accordingly, we hold that the entire case is properly before us for review on this appeal. "[I]t is important that the right to appeal not be lost by mistakes of mere form." Advisory Committee Note to 1979 Amendments to Fed. R. App. P. 3(c).

---

of the whole case. The plaintiff wrote in the order of February 18, 2000, in that space, and then underneath that printed line added "1st day of March, 2000," the date of the final judgment. See Defendant-Appellee's Appendix (App.) 280.

[2]The brief asserts that "Ms. Greer was placed on a 24 hour call status and given a pager to be called back to work," Brief for Appellant 1, and that "two white males were not subjected to 24 hour call status . . .." Id. at 2.

As to her disparate-treatment claims, we conclude that the plaintiff established a prima facie case of race and gender discrimination. The summary-judgment evidence, viewed in the light most favorable to Ms. Greer, showed that she identified four BETs, three of them full-time, hourly paid white men, who were not required to be on on-call status all the time. One of these BETs had been specifically trained to repair the dialysis equipment. Greer attested that when these BETs were off duty and were called back to repair equipment, they were paid call pay, travel pay, and call-back pay, but that she received this pay only one time in four years. Regional points out that Ms. Greer's evidence of how other BETs were treated was based mainly on what they had told her, and argues that this hearsay cannot be considered on a motion for summary judgment. However, Regional did not contest these representations in the District Court, and, in fact, they appear to be validated by Regional's own evidence. Brenda Bingel, Ms. Greer's supervisor, attested to the reasons for the alleged different treatment, and this evidence must be taken to assume that the different treatment did in fact occur. We believe this record is sufficient to show that other BETs were similarly situated to Greer for Title VII purposes, but were treated better. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994); Williams v. Ford Motor Co., 14 F.3d 1305, 1307-08 (8th Cir. 1994).

We also conclude Regional did not proffer a legitimate, nondiscriminatory reason for Greer's treatment. To explain the difference in on-call status and related pay, Regional asserted simply that Ms. Greer was an employee in the dialysis unit, while the other BETs were in the biomedical engineering department. An employer may make its own business decisions, and we do not sit as a super-personnel department. See Harvey v. Anheuser-Busch, Inc., supra, 38 F.3d at 973. But Regional has asserted no reason good enough, on summary judgment, to justify the distinction between the two departments. Why were other BETs, three of them white men, one of whom had been specifically trained to repair dialysis equipment, paid call pay, travel pay, and call-back pay when they were called back to repair equipment? Ms. Greer received none of these benefits. Regional asserts that other employers in the area followed a similar

practice, and such a market justification could certainly be plausible. However, Ms. Greer testified that other St. Louis area dialysis units did pay their technicians call pay. Thus, there is a genuine issue of material fact on this question.

The District Court properly granted summary judgment to Regional on Ms. Greer's claims of discriminatory harassment and constructive discharge brought under section 1981, see Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 566-67 (8th Cir. 2000) (prima facie hostile-work-environment claim requires causal nexus between harassment and protected group status); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981 provides cause of action for race-based employment discrimination based on hostile work environment; hostile work environment shown when incidents of harassment occur either in concert or with regularity that can be termed pervasive); Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 496 (8th Cir. 1996) (dissatisfaction with work assignment is normally not so intolerable as to be basis for constructive discharge).

Accordingly, we affirm the grant of summary judgment as to Ms. Greer's harassment and constructive-discharge claims, we reverse as to her Title VII disparate-treatment claims, and we remand for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.