**Vikki Lynn FISHER, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS and Darin K. McDonald Defendants.**

No. 4:02–CV–90199.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 8, 2003.

Bruce H. Stoltze, Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, PC, Ward A. Rouse, Berg, Rouse Spaulding & Schmidt, PLC, Des Moines, IA, for plaintiff.

Barbara A. Hering, Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, Vicki L. Gillette, Plano, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff Vikki Lynn Fisher ("Fisher") brings this action against her former employer, Electronic Data Systems Corporation ("EDS"), and former supervisor Darin K. McDonald ("McDonald"), alleging sexual harassment, gender-based discrimination, and retaliation in violation of 42 U.S.C. § 2000e–2 ("Title VII") and the Iowa Civil Rights Act, Iowa Code § 216.1 *et seq* (the "ICRA"), and common law claims for assault and battery, wrongful discharge, and intentional infliction of emotional distress. Now before the Court is Defendants' Motion for Partial Summary Judgment, filed on May 2, 2003. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. Factual Background

Ms. Fisher was employed by EDS and served as an administrative assistant to Defendant McDonald from around December, 1999 until May 14, 2001. She alleges that for a period of at least a year during the time she worked for McDonald, beginning around May, 2000, she was subjected to sexual comments, touching, and implications that she would be fired if she refused McDonald's advances. She often received personal telephone calls from McDonald after work hours, during which McDonald would "suggest [she] do sexual things to [herself]" and would make other "explicit"

and "demeaning" remarks. McDonald would frequently ask Plaintiff to describe her undergarments before he would provide work-related information Plaintiff needed. McDonald also made sexual remarks about Plaintiff's dress, "dropped" items on the floor so as to watch Plaintiff as she picked them up, "poked [her] in the butt," and would attempt to unsnap or pull open her clothing or look down her shirt. On one occasion, he went to the men's room and removed his underwear, then placed it on her desk, saying "It's your turn." McDonald became jealous of Plaintiff paying attention to other men and on one occasion, kissed her in the elevator. A log kept by Plaintiff for April and May 2001 indicates that these kinds of remarks and sexual advances occurred on nearly a daily basis. During the period the harassment was ongoing, she continued to receive substantial bonuses and salary. About six to eight months prior to her May, 2001 complaint, Ms. Fisher also received a raise when her position was reclassified from "administrative assistant" to "business systems analyst."

At all times relevant to this dispute, EDS maintained a sexual harassment policy and an "open door" policy whereby any employee could complain to any manager, including the CEO, regarding workplace sexual harassment. Both McDonald and Ms. Fisher were aware of the policy and had received training concerning sexual harassment. Ms. Fisher repeatedly resisted McDonald's harassing conduct, but did not inform anyone else at EDS that she was being harassed until May, 2001, when she first reported McDonald's behavior to an EDS officer.

As soon as it received the complaint, EDS immediately obtained a written statement from Ms. Fisher, hired its outside legal counsel to conduct an investigation, and told McDonald he could not take any action in retaliation against Plaintiff. During the period of the investigation, McDonald was on vacation for part of the time and was required to work from home for part of the time. During some portion of the investigation period, McDonald was permitted to work in the office, and EDS separated Plaintiff and McDonald by asking Plaintiff to work from home with pay.

The results of the investigation found Ms. Fisher's claims against McDonald to be unsubstantiated, and EDS therefore took no disciplinary action against him. EDS did advise McDonald that disciplinary action would be taken if substantiated complaints were made in the future. Although Ms. Fisher had initially expressed her desire to remain in her job, she felt uncomfortable returning to work for McDonald once the investigation concluded. EDS responded by giving her access to its internal job posting board, assigning an employee to assist her in her job search, and providing Ms. Fisher 90 days' paid leave to conduct a job search. No EDS positions were available in Iowa for which Ms. Fisher was qualified and she was unwilling to relocate outside the state. When no job was found, EDS terminated Ms. Fisher on August 28, 2002, offering her a severance payment conditioned on waiver of any claims against EDS or McDonald. She declined to provide such a waiver and this lawsuit ensued.

## II. Standard of Review

The purpose of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving par-

ty and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations; rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond its allegations and the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c), (e); *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. Accordingly, the nonmovant "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir. 1995).

## III. Analysis

On this motion, Defendants argue that 1) EDS is entitled to summary judgment on its affirmative defense to all of Plaintiff's sexual harassment and discrimination claims; 2) that EDS is also entitled to summary judgment on Ms. Fisher's retaliation claim; 3) that her common law claims for wrongful termination and intentional infliction of emotional distress are preempted by the ICRA; and 4) that EDS cannot be held vicariously liable for McDonald's alleged assault and battery of Ms. Fisher or for intentional infliction of emotional distress resulting from it. The Court considers each of these arguments in turn below.

### A. *Ellerth/Faragher* Affirmative Defense to Title VII Sexual Harassment Claim

Plaintiff's claims for sexual harassment and discrimination are raised under both Title VII and the ICRA. As the ICRA was modeled after Title VII of the United States Civil Rights Act, Iowa courts traditionally have looked to federal law for guidance in evaluating hostile work environment and sexual harassment claims brought under the ICRA. *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999); *Lynch v. City of Des Moines*, 454 N.W.2d 827, 833 (Iowa 1990). *See also Beard v. Flying J*, 266 F.3d 792, 798 (8th Cir.2001). Accordingly, the Court will assess the strength of Plaintiff's claims under the rubric of Title VII.

EDS has not challenged Plaintiff's *prima facie* case on this motion, but has moved for summary judgment on its affirmative defense to Plaintiff's sexual harassment and discrimination claims under *Ellerth* and *Faragher*. *Burlington Industries v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998). In *Ellerth* and *Faragher*, the Supreme Court provided an affirmative defense to an employer's vicarious liability under Title VII for an employee's hostile work environment

claim based on a supervisor's harassment, holding that:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages ... [which] comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. *See also Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 597 (8th Cir.1999).

1. *Availability of the Defense: Quid Pro Quo as "Tangible Employment Action"*

▆▆ Plaintiff argues the harassment she experienced is actionable as both "quid pro quo" sexual harassment [1] and "hostile work environment" sexual harassment,[2] and that EDS is not entitled to the affirmative defense on her "quid pro quo" claim. The Supreme Court has found that the distinction between "quid pro quo" harassment and a "hostile work environment" claim is of limited utility. *See Ellerth*, 524 U.S. at 751, 118 S.Ct. 2257. The former concerns threats by the harasser

that are carried out, whereas a hostile work environment claim involves "offensive conduct in general." *See id.* at 751–54, 118 S.Ct. 2257; *Ogden*, 214 F.3d at 1006. Since *Ellerth*, the critical question, regardless of how the plaintiff articulates her claims, is whether a "tangible employment action" occurred. *Ellerth*, 524 U.S. at 751, 118 S.Ct. 2257; *Ogden v. Wax Works*, 214 F.3d 999, 1006 (8th Cir.2000). If a tangible employment action was taken, the affirmative defense is not available.

▆▆ The Supreme Court has defined a "tangible employment action" as a "significant change in employment status such as hiring, firing, failure to promote, reassignment, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. Plaintiff acknowledges that a tangible employment action normally inflicts direct economic harm and that physical touching or sexual remarks do not constitute tangible employment actions. *Id.* at 762, 118 S.Ct. 2257; *Jackson v. Arkansas Dept. of Educ.*, 272 F.3d 1020 (8th Cir.2001). Plaintiff also admits that she was promoted and received raises and bonuses throughout her employment at EDS and thus suffered no economic harm.

However, Plaintiff claims she was subjected to *quid pro quo* discrimination—that she received tangible job benefits only

---

1. To prevail on a *quid pro quo* claim, a plaintiff must establish that 1) she was a member of a protected class; 2) that she was subjected to unwelcome harassment in the form of sexual advances or requests for sexual favors; 3) the harassment was based on sex; and 4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1006 n. 8 (8th Cir.2000), *citing Cram v. Lamson & Sessions, Co.*, 49 F.3d 466, 473 (8th Cir.1995).

2. To prevail on a claim of sexual harassment on a hostile work environment theory, Plaintiff must prove: 1) her membership in a protected group; 2) the occurrence of unwelcome harassment; 3) a causal nexus between the employees' membership in the protected group and the harassment; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir.2000); *Austin v. Minnesota Mining and Manufacturing Co.*, 193 F.3d 992, 993 (8th Cir.1999).

as a reward for submitting to McDonald's harassment and that he implicitly threatened to fire her if she did not continue to do so. The Eighth Circuit's articulation of a *quid pro quo* claim is in the disjunctive—a plaintiff may prevail by showing *either* that her submission to the unwelcome advances was an express or implied condition for receiving job benefits *or* her refusal to submit resulted in a tangible job detriment. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1006 n. 8, *citing Cram v. Lamson & Sessions, Co.*, 49 F.3d 466, 473 (8th Cir.1995). Therefore, the question before the Court is whether, as Plaintiff argues, satisfaction of *either* of the conditions of the traditional *quid pro quo* claim—submission in exchange for a benefit, or refusal resulting in a detriment—may constitute a "tangible employment action."

Defendant EDS argues that a "tangible employment action" must be "adverse" and that the affirmative defense is therefore available even in a "submission" case because no tangible job detriment is suffered. Plaintiff argues the Court should adopt the reasoning of the Second Circuit in *Jin v. Met. Life*, 310 F.3d 84 (2d Cir. 2002), which found the district court had erred in instructing the jury that a tangible employment action must be "adverse" under *Ellerth/Faragher* and held that although the plaintiff suffered no economic harm, the fact that she was required to submit to her supervisor's sexual abuse in order to retain her job amounted to tangible employment action. *See id.* (reaffirming its holding in *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir.), *cert.*

*denied* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994)).

The Court acknowledges that the examples of tangible employment actions cited in *Ellerth* are not exclusive and that *Ellerth* contains no express requirement that the tangible employment action be adverse. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. However, the Eighth Circuit's recent decision in *Newton v. Cadwell Laboratories*, suggests that this Circuit has taken the position, contrary to that of the Second Circuit, that absent a tangible job detriment, no "tangible employment action" can be shown. 156 F.3d 880 (8th Cir.1998). *Cf. Jin*, 310 F.3d 84. There, the Court explained that although plaintiff stated her claim as a *quid pro quo* claim, "the absence of a *detrimental* employment action allows [the defendant] to present an affirmative defense if [the plaintiff] can show [her supervisor's] conduct was sufficient to create a hostile work environment." *Id.* at 883 (emphasis added).

Moreover, under *Ellerth*, the primary factor determining whether a tangible employment action has occurred, regardless of how Plaintiff articulates her claims, is whether the supervisor's threats were carried out. *Id.* at 761, 118 S.Ct. 2257. As at least one other court in this Circuit has recognized, "submission" cases, where a supervisor makes favorable decisions that affect the terms and conditions of plaintiff's employment, such as awarding benefits or merely permitting the victim to keep her job, involve only "unfulfilled threats." *See Grozdanich v. Leisure Hills Health Center, Inc.*, 25 F.Supp.2d 953 (D.Minn.1998).[3] Therefore, *per Ellerth*,

---

**3.** The Court acknowledges that *Ellerth* was argued as a case where plaintiff did not submit to her supervisor's advances, while Plaintiff here maintains she received tangible job benefits for her submission. *See Jin*, 310 F.3d at 96–97 (distinguishing *Ellerth* on these grounds). However, both asserted a claim of

"quid pro quo" discrimination, and the fact that the plaintiff in *Ellerth* chose not to label her case a "submission case" makes no difference. The core argument there, as here, was that the supervisor threatened to retaliate against the plaintiff if she denied him sexual liberties, whether by discontinuing benefits,

such cases must be distinguished from the typical *quid pro quo* case, where the employee who refuses to submit to her supervisor's advances suffers a job-related detriment, and are properly assessed under the hostile work environment framework. *See Ellerth*, 524 U.S. at 753, 118 S.Ct. 2257. *See also Grozdanich*, 25 F.Supp.2d 953 (reaching the same conclusion).

The Court believes the present case is largely indistinguishable from *Ellerth* itself, which the Supreme Court found "involve[d] only unfulfilled threats, [and] should be categorized as a hostile work environment claim." *Ellerth*, 524 U.S. at 754, 118 S.Ct. 2257. In *Ellerth*, the plaintiff's employer had made comments about her breasts, expressed reservations about her promotion because she was not "loose enough," rubbed her knee, refused to respond to her business-related questions unless she told him what she was wearing, and told her that wearing shorter skirts would make her job "a whole heck of a lot easier." *Id.* at 748, 118 S.Ct. 2257. Similarly, Plaintiff here was allegedly subjected to numerous inappropriate comments, touching, and sexual advances. Her ability to work efficiently was also allegedly impeded by McDonald ignoring her or not responding to her when she needed answers to business related questions, or even for a period of several days, unless she responded to his advances. McDonald had also mentioned that Plaintiff could move to a different department, since she "obviously didn't enjoy working for him" and had implied that she could lose her job if she refused to submit to his conduct.

The Court first finds that there is not sufficient evidence to support Plaintiff's first, and primary allegation, that McDonald would award her promotions, raises, and benefits only if she submitted to his harassment. Plaintiff alleges no explicit threats by McDonald to condition her job benefits on her submission, and while she avoided and resisted McDonald's harassment and repeatedly complained to him about it throughout the time she worked for him, she received these job benefits regardless. While a jury could reasonably conclude she received these job benefits because McDonald had a sexual interest in Plaintiff, there is no genuine issue of fact as to whether the benefits were tied to her submission. Second, McDonald's implicit threat to fire Plaintiff was clearly unfulfilled, since McDonald played no role in Plaintiff's eventual termination. And the third potential "threat" Plaintiff alleges, that McDonald refused to provide necessary information unless she responded to his harassment, cannot amount to a tangible employment decision. *See Ellerth*, 524 U.S. at 742, 118 S.Ct. 2257 (a "tangible employment decision requires an official act of the enterprise, a company act."). Thus, the Court concludes that here, as in *Ellerth*, Plaintiff alleges only unfulfilled threats. Because the Court concludes that Plaintiff's *quid pro quo* claim lies squarely within the ambit of *Ellerth*, Plaintiff's claims should be viewed as a hostile work environment claim and Defendant EDS is entitled to assert its affirmative defense. *See Ellerth*, 524 U.S. at 753, 118 S.Ct. 2257.

#### 2. *Other "Tangible Employment Actions" Asserted*

■ Plaintiff also argues that the actions taken by EDS during and after its investigation, namely, removing her from the premises of EDS and requiring her to work from home, forcing her to look for another job, requiring her to choose between termination and a job outside the state, and conditioning her severance

as alleged here, or taking detrimental action

against her, as alleged here and in *Ellerth*.

package on a waiver of her right to sue are all tangible employment actions. She also argues that the unsuccessful job search that led to her termination was a tangible employment action because it was the "culmination of the sexual harassment." (Plaintiff's Brief at 19, citing *Bennett v. Progressive Corp.*, 225 F.Supp.2d 190, 204 (N.D.N.Y.2002)).

The Court does not believe that any of these actions taken by EDS constitute a "tangible employment action" that would deprive EDS of its affirmative defense. At no time prior to her termination, including during her job search, was Plaintiff deprived of pay or benefits or subject to a change of employment status. Absent a change in pay, benefits, or duties, reassignment or even demotion are not enough to constitute a tangible employment action. *See Ellerth*, 524 U.S. at 761–62, 118 S.Ct. 2257, *citing Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 887 (6th Cir.1996) (demotion without change in pay not a tangible employment action), *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994) (reassignment). As EDS had not found that Plaintiff's claims were substantiated, it had no obligation to take disciplinary action against McDonald by removing him from his position, which is essentially what Plaintiff argues here should have been done. Consequently, EDS took the only course open to it to retain Plaintiff, while not requiring her to work in close proximity to McDonald. Courts in other circuits have recognized that an employer "has wide discretion in choosing how to minimize contact between [the victim and alleged harasser]" and "may properly consider the relative ease of moving them and their respective importance to its business operations." *See Swenson v. Potter*, 271 F.3d 1184, 1194 (9th Cir.2001). Although Plaintiff apparently would have preferred to remain in her job, but without McDonald, the Court

cannot conclude that the remedial steps taken by EDS to separate McDonald and Plaintiff and to find a different position for Plaintiff resulted in an objectively less desirable position for Plaintiff. In fact, the Court believes they were reasonably calculated to "prevent and correct promptly harassing behavior." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

With regard to Plaintiff being forced to choose between termination and an undesirable position, the Court shares the view of the Ninth Circuit that "an employer does not satisfy its remedial obligation by transferring the victim to a less desirable location. Such a transfer adversely affects the terms and conditions of the victim's employment," even if the victim's pay, benefits, and schedule remain unchanged. *Swenson*, 271 F.3d at 1193. However, the Court's ultimate inquiry must be whether EDS acted reasonably and appropriately under the circumstances. *See id.* at 1197–98. EDS did not compel Plaintiff to take the out-of-state position or to return to work with McDonald; instead it gave her additional time to find an appropriate alternative. The Court does not believe that EDS was obligated to create a position for Plaintiff or continue paying her for an indefinite job search leave. This allegation does not amount to a tangible employment action.

### 3. Merits of the Affirmative Defense

Having found that EDS is entitled to raise the *Ellerth/Faragher* defense, the Court now considers whether EDS has satisfied its burden as to its elements. EDS must first show that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct.

2275. Plaintiff does not dispute that EDS maintained an anti-harassment policy and that both she and McDonald were aware of and had received training on this policy. *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257 ("[P]roof that an employer had promulgated an antiharassment policy with a complaint procedure is not necessary in every instance as a matter of law, [but] the need for [such a] policy may appropriately be addressed ... when litigating the first element of the defense.") Plaintiff also agrees that EDS promptly contacted her concerning her complaint and initiated an investigation.

Plaintiff nonetheless argues that EDS did not satisfy its duty to promptly remedy the alleged harassment because the investigation initiated by EDS immediately following Plaintiff's complaint on May 14, 2001 was deficient in the following respects: 1) EDS retained its regular outside counsel to conduct the investigation; 2) the investigator failed to properly discuss the complaint with Plaintiff before interviewing McDonald and other EDS personnel; 3) the investigation "focused" on Plaintiff's job performance, attitude, and dress rather than on the alleged harassing conduct; 4) the investigator failed to "properly" interview all witnesses mentioned by Plaintiff; 5) a written report of the findings was not prepared immediately, but some time after the conclusion of the investigation; and 6) the investigator failed to prepare notes indicating when the results of the investigation were reported to EDS, and to whom. In support, Plaintiff has provided an affidavit from her expert, a human resources consultant, stating that these failures rendered the investigation insufficient and improper.

■■■ Upon careful review of the record, the Court does not find that the alleged flaws in the investigation rendered it an inadequate response to Plaintiff's allegations. An investigation is satisfactory for purposes of Title VII if it is fair, reasonable, and prompt. *See Scusa v. Nestle,* 181 F.3d 958, 967 (8th Cir.1999). The investigation need not be perfect, so long as there is no bad faith or a "rigged conclusion." *See Swenson,* 271 F.3d at 1193; *Brown v. Perry,* 184 F.3d 388, 397 (4th Cir.1999). Plaintiff has relied largely on the claims of her expert, Mr. Lipovac, that the investigation should not be deemed reasonable and fair. However, Mr. Lipovac has admitted in deposition that there are no rules governing the manner in which an investigation must be conducted, and the Court is likewise aware of no authorities mandating that a written report be issued, that the complainant be interviewed first, that the employer's outside legal counsel may not be used, or that information concerning the complainant's job performance necessarily taints the investigation. *See Malik v. Carrier Corp.,* 986 F.Supp. 86, 96 (D.Conn.1997), *aff'd. in part, rev'd. in part on other grounds,* 202 F.3d 97 (2d Cir.2000) ("there is no body of law or legal standard concerning the manner in which investigations of claims of sexual harassment may be conducted"). He has also agreed that questions of motive, credibility, and the "welcomeness" of the conduct are important in an investigation of allegations of harassment and that inquiries into the performance, conduct, and dress of the plaintiff may therefore be relevant and proper. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 68–69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("welcomeness" is an element of a sexual harassment claim). Indeed, Mr. Lipovac has stated that he engages in many of the same practices in conducting his own investigations, based on his judgment and discretion, for which he faults the investigator retained by EDS.

Neither does the Court find that the other specific issues raised by Plaintiff call into question the fairness or reasonableness of the investigation. EDS' investigator began by reviewing Plaintiff's written statement, before interviewing any witnesses. The thoroughness of her investigation is evidenced by the nearly three hundred pages of handwritten notes and correspondence she obtained from those she interviewed. Although the investigator did not interview each witness named by Plaintiff, Plaintiff has admitted that there were no eyewitnesses to the harassing conduct, although some witnesses observed her reaction when receiving phone calls from McDonald after work. While the perspectives of Plaintiff's relatives and others who observed her receiving harassing phone calls after work hours may have lent further credibility to Plaintiff's version of events, the investigator was not obligated to interview those who were not eyewitnesses and did interview a number of witnesses referred by Plaintiff who had witnessed the phone calls or whom Plaintiff had confided in about the alleged harassment. *See Swenson*, 271 F.3d at 1194 n. 4. *Cf. Hathaway v. Runyon*, 132 F.3d 1214, 1218–19, 1224 (8th Cir.1997) (finding employer remiss in failing to interview or obtain a statement from an eyewitness).

Although a jury could find the investigation process could have been conducted with greater sensitivity to Plaintiff, the Court cannot conclude that the investigation was "cursory" or otherwise unfair, as was the case in *Ogden*, 214 F.3d at 1007. Most critically, the Court's review of the investigation and the alleged deficiencies do not alter its conclusion that EDS acted promptly and reasonably to remedy the harassment and avoid future incidents. *See Faragher*, 524 U.S. at 806, 118 S.Ct. 2275 (the "primary objective" of Title VII is "not to provide redress but to avoid harm"), *quoted in Jackson*, 272 F.3d at 1025 (rejecting challenges to the effectiveness of an anti-harassment policy). *See also Swenson*, 271 F.3d at 1197 (noting that since the remedial and preventative purposes of Title VII were satisfied, a finding that a better investigation may have substantiated Plaintiff's claims was not critical). McDonald was separated from Plaintiff, cautioned about the consequences of a substantiated complaint, and warned not to retaliate, and no further harassment occurred. Thus, EDS has established the first prong of its affirmative defense.

With regard to the second prong of the affirmative defense, EDS argues that Plaintiff unreasonably failed to take advantage of preventative and corrective measures available to her by complaining of the harassing conduct only to McDonald and by failing to take advantage of EDS' "open door policy" by informing any of the other supervisors about McDonald's conduct until nearly a year after the harassment had allegedly begun. Plaintiff acknowledges she was aware of the "open door policy" and that she reported McDonald's conduct to no one prior to May 14, 2001. Still, she asserts that whether she acted reasonably presents a material factual dispute, arguing that her repeated complaints to McDonald were in accordance with EDS' policy recommending employees to first discuss concerns about sexual harassment with the harassing person before complaining to other supervisors.

▇ The Court has considered Plaintiff's arguments, but does not believe that a reasonable jury could conclude that Plaintiff acted reasonably in failing to inform any EDS supervisor or officer, other than her harasser, of conduct which was allegedly ongoing for nearly a year and had become almost a daily occurrence for a

period of a full month before Plaintiff finally made her report to David Snyder. Plaintiff has not alleged a belief that such a complaint would have been futile or presented any evidence of either misconduct on the part of EDS or other circumstances that could have prevented her from making a complaint at an earlier time other than general statements that she was afraid to complain and was "intimidated" by McDonald. Plaintiff acknowledges she was not afraid to be alone with McDonald and she provides no other basis for her fear of reporting. Subjective statements of fear are not sufficient to excuse Plaintiff from utilizing the complaint procedure. *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir.2001).

As Chief Judge Arnold has aptly noted, "[s]ummary judgment in favor of parties who have the burden of proof are rare, and rightly so." *Turner v. Ferguson*, 149 F.3d 821 (8th Cir.1998). Nonetheless, the Court concludes this is such a case. As EDS has shown that it exercised reasonable care to prevent and promptly correct the alleged harassing behavior and that Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities it provided her, EDS is entitled to the protection of the *Ellerth/Faragher* defense and its motion is granted on this issue.

**B. Title VII Retaliation Claim**

 Both Defendants EDS and McDonald move for summary judgment on Plaintiff's retaliation claim. To prevail on this claim, Plaintiff must prove that 1) she filed a charge of harassment or engaged in other protected activity; 2) she suffered adverse employment action; and 3) the adverse action was causally linked to the protected activity. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001); *Ogden*, 214 F.3d at 1006, n. 11 (8th

Cir.2000) (citation omitted). Retaliation claims under the ICRA follow the same analysis as those under Title VII. *Smith v. Allen Health Systems*, 302 F.3d 827, 836 (8th Cir.2002). It is clear that Plaintiff's complaint of sexual harassment to David Snyder is a "protected activity." For purposes of a retaliation claim, an adverse action normally amounts to some type of a tangible change in duties or work conditions that causes a material change in the terms and conditions of employment or creates an employment disadvantage. *Manning v. Metropolitan Life*, 127 F.3d 686, 692 (8th Cir.1997).

 The Court first considers Plaintiff's ultimate termination three and a half months after her initial complaint as the adverse employment action grounding her claim of retaliation and concludes that the evidence fails to establish the necessary causal connection between Plaintiff's complaint and her eventual termination. A "causal link" may be demonstrated indirectly, so long as the evidence is sufficient to give rise to an inference that "an employer's 'retaliatory motive played a part in the adverse employment action.'" *Kipp v. Missouri Highway*, 280 F.3d 893, 896–97 (8th Cir.2002). Here, as in *Kipp*, the interval between the complaint and Plaintiff's termination alone "so dilutes any inference of causation that [the Court is] constrained to hold as a matter of law that the temporal connection could not justify a finding in [her] favor on the matter of causal link." *Id.* at 897 (rejecting the inference, given an interval of over two months). In addition, it is generally true that "more than a temporal connection . . . is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999).

The Court is not persuaded by Plaintiff's argument that the chain of events leading

from the complaint to the investigation to being forced to search for a new job to her termination is itself enough to infer retaliation. *See Equal Employment Opportunity Comm'n v. Kohler Co.*, 335 F.3d 766 (8th Cir.2003) ("The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes.") (citing *Kipp* ). Nor is there any other evidence that EDS was motivated by retaliatory animus in its response to Plaintiff's complaint. It is undisputed that EDS took steps to advise McDonald that he was not permitted to take any actions in retaliation against Plaintiff, and Plaintiff makes no allegations that McDonald ever did so or was in a position to do so. It is similarly undisputed that EDS endeavored to assist Plaintiff in a job search in order to retain her in a comparable position that would not require her to work directly with McDonald and continued to pay her for a full three months while the job search continued. As with her harassment claims, Plaintiff's claim that she wanted to remain in her position but that McDonald was kept in his position instead, which led to the unsuccessful job search and termination, essentially asks the Court to find that since McDonald was not disciplined for harassment, Plaintiff was retaliated against. However, Plaintiff cannot prevail on this basis. In fact, McDonald could plausibly assert his own claim against EDS were he to suffer a job detriment on the basis of an unsubstantiated allegation. *See, e.g. Lee v. Overseas Shipholding Group, Inc.*, 2001 WL 849747 (S.D.N.Y. July 30, 2001) (raising a claim based in part on false accusations of sexual harassment by other employees). The "federal courts do not sit as a super-personnel department that re-examines an entity's business decisions." *Harvey v. Anheuser–Busch, Inc.* 38 F.3d 968, 973 (8th Cir.1994) (internal quotations omitted); *see also Greer v. St. Louis Reg'l*

*Med. Ctr.*, 258 F.3d 843, 847 (8th Cir.2001). Plaintiff cannot show that her termination was retaliatory.

Finally, Plaintiff argues that the basis for her retaliation claim should be viewed more broadly than the termination itself. She asserts that the deficiencies of the investigation process were also retaliatory in that the process made Plaintiff feel unwilling to stay at EDS and the outcome was the non-discipline of McDonald, while Plaintiff was forced to relocate or be terminated. Because the Court has already found that EDS responded promptly and appropriately to Plaintiff's complaint, Plaintiff cannot show that these steps constitute adverse employment actions for purposes of Plaintiff's retaliation claim. Defendants' motion is granted on this issue.

## C. Liability of Defendant McDonald on Title VII Claims

Plaintiff's Title VII claims have been raised against EDS and against Defendant McDonald individually. The Eighth Circuit has clearly held that supervisors are not subject to individual liability under Title VII, although they may be deemed an agent of the employer for purposes of vicarious liability. *Bales v. Wal–Mart*, 143 F.3d 1103, 1111 (8th Cir.1998); *Bonomolo–Hagen v. Clay Central–Everly Community School District*, 121 F.3d 446 (8th Cir.1997). Plaintiff argues that while her claims against McDonald individually for damages are barred under Title VII, he may be liable individually for equitable, injunctive relief. The Court finds no support for such a distinction, and Plaintiff has provided none. Defendant McDonald's motion is granted as to Plaintiff's Title VII claims. The Court notes, however, that McDonald may still be held individually liable under the ICRA, and thus his motion is properly directed here only

to the Title VII claims. *See Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) (interpreting the ICRA to provide for individual liability of supervisory employees).

### D. Preemption Under the Iowa Civil Rights Act (ICRA)

Defendants' motion next urges that summary judgment should be granted in its favor on Plaintiffs' claims against both Defendants for wrongful discharge and intentional infliction of emotional distress, as these claims are preempted by the ICRA. The Iowa Supreme Court has held that "preemption [of a common law tort claim by a statute] occurs unless the claims are separate and independent, and therefore incidental, causes of action. The claims are not separate and independent when, under the facts of the case, success in the nonchapter [216] claims . . . requires proof of discrimination." *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 (Iowa 1993) (citations omitted). Plaintiff concedes preemption of her wrongful discharge claim and admits that to the extent her emotional distress claim is based upon discrimination, it is also barred.

However, Plaintiff argues that her claim for intentional infliction of emotional distress arises in part out of assault and battery, and to that extent, is not preempted. *See Weems v. Federated Mut. Ins. Co.*, 220 F.Supp.2d 979, 995 (N.D.Iowa 2002) (finding intentional infliction of emotional distress claim arising out of a strip search not preempted by the ICRA). The elements of the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intentional causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's out-

rageous conduct. *See id.; Amsden v. Grinnell Mut. Reinsurance Co.*, 203 N.W.2d 252, 255 (Iowa 1972). Taking the record in the light most favorable to Plaintiff, the Court concludes that proof of discrimination is not essential to her emotional distress claim to the extent it arises from the alleged assault and battery.

Defendants have argued that even if the Court should find Plaintiff's claim not preempted, Plaintiff has not provided sufficient evidence to resist summary judgment. Under Iowa law, the high standard of "outrageousness" is not easily met and requires a showing of "extreme egregiousness." *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 155, 157 (Iowa 1996). In order for conduct to be considered outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of human decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Marks v. Estate of Hartgerink*, 528 N.W.2d 539, 546 (Iowa 1995) (citations omitted). The conduct alleged by Plaintiff which could be viewed as the basis for her assault and battery claims include McDonald's "poking [her] in the butt," kissing her in the elevator, touching her dress, knee, or foot, attempting to unbutton her dress, and lifting up Plaintiff's shirt from behind. As Plaintiff describes the events, there were periods when she was daily subject to unwelcome, offensive touchings of this sort, despite her protests. The Court believes a reasonable jury could find such conduct outrageous and finds the authorities cited by Defendants for the opposite conclusion are not dispositive on this issue. *See, e.g. Weems*, 220 F.Supp.2d 979; *Edmunds v. Mercy Hosp.*, 503 N.W.2d 877 (Iowa Ct.App.1993).

Defendants also argue that Plaintiff is unable to present evidence distinguishing the severe emotional distress caused by the assaultive acts of Defendant Mc-

Donald, which are not preempted, and the effects of the sexual harassment as a whole, which are. The primary evidence on this issue is the deposition of Plaintiff's psychologist. Although Defendants read this testimony to clearly state that the depression, anxiety, and relationship issues reported by Plaintiff, which he diagnosed as Post Traumatic Stress Disorder, were the result of the entire pattern of ongoing harassment, the Court finds it somewhat ambiguous as to whether single touchings could also be deemed serious enough to cause Plaintiff's symptoms. Viewing the record in the light most favorable to Plaintiff, the Court finds she may be able to substantiate a claim for intentional infliction of emotional distress resulting from the alleged individual assaults and batteries. In light of the Court's conclusion concerning the vicarious liability of EDS in Section E below, Defendants' motion is granted as to Defendant EDS, but denied as to Defendant McDonald.

### E. Vicarious Liability of Defendant EDS

 Finally, Defendant EDS asks the Court to find it is not subject to vicarious liability for McDonald's alleged assault and battery and for intentional infliction of emotional distress. Under the doctrine of *respondeat superior*, an employer is liable for the conduct of an employee committed while the employee is acting within the scope of his or her employment. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). "For an act to be within the scope of employment the conduct 'must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Id.* at 705 (citations omitted). An act may be deemed within the scope of employment where it is "necessary to accomplish the purpose of the employment and is intended for such purpose" or where the acts "are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods ... of carrying out the objectives of the employment." *Riniker v. Wilson*, 623 N.W.2d 220, 231 (Iowa App.2000).

Applying this standard, the Court's review of the record leads it to conclude that Plaintiff's theory of *respondeat superior* must be rejected as a matter of law. *See Sandman v. Hagan*, 261 Iowa 560, 154 N.W.2d 113, 118 (Iowa 1967) (finding that the question of whether an act is within the scope of employment may appropriately be decided by the court). There is no evidence in the record that EDS could reasonably have foreseen the harm allegedly caused by McDonald or otherwise assumed the risk that he would engage in such conduct. *See Ellerth*, 524 U.S. at 758–59, 118 S.Ct. 2257 (noting that a negligent employer may be liable for torts committed by employees outside the scope of employment). *See also Godar*, 588 N.W.2d at 706–07 (focusing on the scope of the alleged conduct in light of that reasonably foreseen by the employer). The mere fact that Plaintiff was employed as McDonald's assistant is insufficient to impose on EDS liability for McDonald's actions as a risk of doing business. *See Ellerth*, 524 U.S. at 758, 118 S.Ct. 2257 ("The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment."); *Perrigo v. Harveys Iowa Management Co., Inc.*, 2000 WL 33363252 (S.D.Iowa 2000) (applying *Godar* to find no vicarious employer liability for alleged sexual misconduct by restaurant manager against waitress); *Riniker*, 623 N.W.2d 220 (finding employer not liable for sexual abuse of an employee's wife on the employer's premises). McDonald's actions, as alleged by Plaintiff, were not within the scope of his employment as her supervisor and were not necessary to accomplish the

purposes of that role. Defendants' motion is granted on this issue.

## IV. Order

Defendants' Partial Motion for Summary Judgment is **granted in part** and **denied in part**.

IT IS SO ORDERED.