# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1754

_____

In re: National Warranty Insurance Risk    *
Retention Group, doing business as    *
National Warranty Insurance Company    *
and National Warranty Insurance Group,    *
   *
         Debtor.    *
_____    *
   *
Phyllis Hoffman,    *
   *
         Appellant,    *    Appeal from the United States
   *    Bankruptcy Appellate Panel
     v.    *    for the Eighth Circuit
   *
Theo Bullmore; Simon Whicker,    *
as Joint Official Liquidators,    *
   *
         Appellees.    *

_____

Submitted: August 26, 2004
Filed: September 24, 2004

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Phyllis Hoffman appeals from the decision of the United States Bankruptcy Appellate Panel for the Eighth Circuit affirming the injunction of the United States

Bankruptcy Court for the District of Nebraska.[1] Ms. Hoffman was one of approximately 950,000 buyers who hold a Vehicle Service Contract ("VSC") guaranteed by National Warranty Insurance Group ("National Warranty"). National Warranty, a Cayman Islands corporation, operated a risk retention group insuring group members who were obligated to contract holders that had purchased VSCs from those group members. National Warranty's primary place of business was Lincoln, Nebraska and all of its business and assets were located within the United States. Following a series of incidents where group members refused to allow their reserve accounts to be used to pay claims, Ms. Hoffman initiated a lawsuit against National Warranty, which she hoped to convert into a class action. National Warranty then transferred 24 million dollars out of bank accounts within the United States to bank accounts located in the Cayman Islands and filed for liquidation under Cayman law. National Warranty's liquidators, Theo Bullmore and Simon Whicker, filed a petition under 11 U.S.C. § 304 seeking an injunction to stop all proceedings against the assets involved in the Cayman Island liquidation. Ms. Hoffman, on behalf of herself and others similarly situated, filed an objection to the requested § 304 relief. After conducting a trial on the merits of the injunction, the bankruptcy court granted the requested § 304 relief. The bankruptcy appellate panel affirmed the decision of the bankruptcy court. We affirm the decision of the bankruptcy appellate panel.

I

We incorporate the background set forth in the opinion of the bankruptcy appellate panel. See In re Nat'l Warranty Ins. Risk Retention Group, 306 B.R. 614, 617-19 (B.A.P. 8th Cir. 2004).

---

[1]The Honorable Timothy J. Mahoney, Bankruptcy Judge, United States Bankruptcy Court for the District of Nebraska.

II

The parties raise numerous issues on appeal, but we agree with the bankruptcy appellate panel there are three main issues: whether the bankruptcy court had jurisdiction over the matter; whether injunctive relief was appropriate; and whether the injunction was too broad. There is also a secondary issue involving the bankruptcy court's denial of discovery. We now set out to answer each question.

The first question before us is whether the bankruptcy appellate panel erred in upholding the bankruptcy court's decision to exercise ancillary jurisdiction over the present matter. Congress expressly granted ancillary jurisdiction to bankruptcy courts to act as local auxiliaries to a foreign bankruptcy proceeding to honor requests from foreign representatives for the turnover of assets, injunctions and other such requested relief. See 11 U.S.C. § 304 (2004). Ancillary jurisdiction is triggered by a foreign representative filing a petition showing the commencement of a foreign proceeding. Id. Ms. Hoffman challenges the bankruptcy court's finding the Cayman Islands liquidation was a "foreign proceeding." As this challenge implicates the bankruptcy court's jurisdiction, we review the matter *de novo*. Gilbert v. Monsanto Co., 216 F.3d 695, 699 (8th Cir. 2000).

The Bankruptcy Code defines the term "foreign proceeding" as:

a proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

11 U.S.C. § 101(23). The bankruptcy court found the Cayman Islands proceeding was a foreign proceeding in National Warranty's domicile for the purpose of winding

up and liquidating the corporation. On appeal, the major point of contention is the meaning of the term "domicile." The bankruptcy court found, and the bankruptcy appellate panel agreed, the Cayman Islands is National Warranty's domicile because it is its place of incorporation. Ms. Hoffman contends, as a matter of law, the term "domicile" as used in § 304 applies only to natural-person debtors because corporate debtors are not generally deemed to have a "domicile." We reject this argument.

The meaning of the term "domicile" and the term's application to corporate debtors is well-settled. For years, federal courts interpreting jurisdictional and venue issues have considered a corporation's domicile to be its place of incorporation. See, e.g., United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947) ("[A] corporation has its home, residence, domicile and citizenship where it was originally incorporated and not elsewhere, regardless of where its principal place of business may be located."). Ms. Hoffman argues that jurisdiction and venue cases are inapplicable to bankruptcy proceedings. However, even within the legal discipline of bankruptcy, a corporation's domicile is the place of incorporation. See, e.g., In re Rimsat, Ltd., 98 F.3d 956, 960 (7th Cir. 1996) (citing Bank of Augusta v. Earle, 38 U.S. 519, 588 (1839) (a corporation "must dwell in the place of its creation")). Moreover, we can think of no reason to distinguish domicile in jurisdiction cases from domicile in bankruptcy cases involving § 304. We thus conclude the term "domicile" as used in § 304 refers to a corporation's place of incorporation.

Next, Ms. Hoffman challenges the appropriateness of injunctive relief and the proper of scope of the injunction. We review the appropriateness of and scope of injunctive relief for an abuse of discretion. "An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment." United States v. McNeil, 90 F.3d 298, 300-01 (8th Cir. 1996). A "court's decision will not be disturbed as long as it is

within the range of discretion afforded to a given determination and is not influenced by a mistake of law." Id.

The prospect of obtaining injunctive relief is one reason for filing a petition under § 304. Section 304(c) provides a list of factors to guide the court in the determination of whether to grant § 304 relief. These factors are:

(1)     just treatment of all holders of claims against or interests in such estate;

(2)     protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)     prevention of preferential or fraudulent dispositions of property of such estate;

(4)     distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5)     comity; and

(6)     if appropriate, the provision of an opportunity for a fresh start for the individual that such a foreign proceeding concerns.

We conclude the bankruptcy court properly evaluated the above factors and did not abuse its discretion in granting injunctive relief. Ms. Hoffman essentially wants to reargue her case by focusing on the "just treatment of all holders of claims" factor. Ms. Hoffman argues the Cayman proceeding is not only inconvenient, the proceeding completely eliminates the rights of American consumers because the Liquidators in the Cayman Islands currently do not recognize the VSC holders as legitimate claimants as they hold unliquidated claims. However, as the bankruptcy court found, Cayman law provides each VSC holder with sufficient opportunity to liquidate their claim. A class action is unlikely under Cayman law, so each claimant must liquidate

their claim individually. Liquidating individually may be inconvenient, but we agree with the bankruptcy court, Cayman law is capable of justly treating all claimants.

As to the other factors, the bankruptcy court focused on the comity factor stating it respects our sister common law jurisdiction in the Cayman Islands. Utilizing the testimony of a highly respected barrister from England, the bankruptcy court concluded the liquidators have the duty and ability to act impartially and evenhandedly among the different competing interests. The bankruptcy court noted the Cayman Companies Law was similar to but not exactly the same as the Bankruptcy Code. All ordinary unsecured creditors are treated the same and local creditors do not have preference over foreign creditors. Companies Law provides for the prevention of fraudulent transfers if the payment is made with an improper motive. The bankruptcy appellate panel also conducted a thorough review of the bankruptcy court's analysis concluding the decision was not clearly erroneous. We find the bankruptcy appellate panel did not abuse its discretion in doing so.

Ms. Hoffman further challenges the broad scope of the injunction. Specifically, Ms. Hoffman contends the bankruptcy court's order impermissibly prohibits discovery by third party non-debtors and disallows a class action to proceed within the United States where the litigants can more cost effectively pursue their claims. However, as the bankruptcy appellate panel concluded, the bankruptcy court did not commit an abuse of discretion by fashioning a broad injunction. Other courts reviewing the scope of an injunction pursuant to § 304 have determined the court is free to mold appropriate relief in near "blank check" fashion. In re Culmer, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 324-25 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1978), U.S.C.C.A.N. 1978, p. 5787). The bankruptcy appellate panel correctly analogized a § 304 injunction to the automatic stay common in nearly all bankruptcy cases. In re Banco Nacional de Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988). The purpose of an automatic stay, and a § 304 injunction, is to prevent a

chaotic and uncontrolled scramble for the debtor's estate, thereby permitting a systematic and equitable distribution. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.C.C.A.N. 1978, pp. 5787, 6296 (discussing the purpose of the automatic stay in bankruptcy cases). The bankruptcy court and subsequently the bankruptcy appellate panel did not abuse their discretion by broadly fashioning the scope of the injunction to meet this purpose.

Finally, a secondary issue involving discovery remains. Ms. Hoffman contends the bankruptcy appellate panel failed to rule upon the bankruptcy court's denial of discovery regarding National Warranty's member lists. Bullmore and Whicker claim this issue is not properly before us on appeal because the Notice of Appeal does not identify the discovery order among the orders for which the appeal is taken.

Federal Appellate Rules require a notice of appeal to "designate the judgment, order, or part thereof being appealed." See Fed. R. App. P. 3(c)(1)(B). We do not strictly construe the contents of the notice of appeal. Greer v. St. Louis Reg'l Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001). We generally permit review where the intent of the appeal is obvious and the adverse party shows no prejudice. Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002). But cf. id. (noting "[o]ur court previously has held that an appeal from one order does not 'inherently imply' an intent to appeal other orders entered in the action").

The Notice of Appeal indicates Ms. Hoffman appeals from the order of the bankruptcy appellate panel affirming the decision of the bankruptcy court entered on August 19, 2003. The bankruptcy appellate panel order and the bankruptcy court's August 19, 2003 order represent the final orders of the respective courts. "Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment." Greer, 258 F.3d at 846. The obvious intent of the Notice of Appeal was to appeal all orders, including discovery orders, that led up

to the courts' final decisions. Furthermore, Bullmore and Whicker demonstrate no prejudice in us reviewing the merits of Ms. Hoffman's claim of error. We will therefore review the merits of Ms. Hoffman's claim of error.

Although the bankruptcy appellate panel failed to rule on the denial of discovery, we find that error without prejudice as the bankruptcy court did not abuse its discretion by denying discovery. See MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 934 (8th Cir. 2004) (reviewing the district court's discovery decision under an abuse of discretion standard). Ms. Hoffman asserts that if all group members are United States corporations then the requested information is relevant and necessary to the determination of whether the convenience of the parties is better served by litigation in the United States and whether insider treatment and preferences would have been made known. However, all parties concede all of National Warranty's business including its member groups were located in the United States, so the information would have little impact on the determination of whether the parties are better served by litigation in the United States. Furthermore, the requested information is of questionable relevancy in that the ultimate determination does not hinge on the existence of insider treatment and preferences. Therefore, we are unwilling to conclude the bankruptcy court abused its discretion in denying the requested discovery.

III

For the foregoing reasons, we affirm the decision of the bankruptcy appellate panel.

_____