United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 17, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-50118

ELAINE SNOW,

Plaintiff - Appellant,

VERSUS

WRS GROUP, INC., WRS GROUP LTD.,
D/B/A WRS GROUP INC., D/B/A CHILDBIRTH GRAPHICS,

Defendants- Appellees.

_____

consolidated with

No. 02-50812

WRS GROUP LTD.,

Plaintiff - Appellee,

VERSUS

ELAINE SNOW,

Defendant - Appellant.

1

(00-CV-213 & 02-CV-17)

Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

These two consolidated appeals concern the commercial use of photographs taken of appellant Elaine Snow during the birth of her child. The district court dismissed her copyright infringement and state law claims and later enjoined the prosecution of her state court actions in state court. Snow's first appeal challenges the district court's dismissal of her state law claims against defendant-appellee, WRS Group, Ltd. ("WRS") on statute of limitations grounds. Her second appeal contests whether her state court suit may be enjoined under the re-litigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283. For the following reasons, we AFFIRM IN PART, but VACATE the district court's injunction of Snow's state court suit.

## I. Background

On July 12, 1982, Elaine Snow and her husband William Henry Snow III hired a photographer while living in California to take photographs of the birth of their son. In 1983, the Snows moved to

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Oregon. While there, William, without telling Elaine, gave permission to Candace Palmo, the mid-wife who delivered the Snow's child, to show the photographs to her childbirth class in California and forwarded her the photograph negatives.

Palmo used these photographs in her childbirth class and in 1986 also began displaying the photographs in a slide show entitled "Joyous Beginnings. Later, Elaine searched for and was unable to locate the negatives to these photographs. At this point, William told Elaine that he had given the negatives to Palmo to use in her childbirth class.

In 1988, Childbirth Graphics, Ltd. purchased the marketing and distribution rights to the "Joyous Beginnings" presentation from Palmo. Palmo told Jamie Bolane, president of Childbirth Graphics, that all of the individuals shown in the slide show had consented to the use of their photographs. In 1992, WRS, a Texas entity, purchased "Joyous Beginnings" from Childbirth Graphics. From 1992 on, WRS marketed and sold this product through various means, including on-line.

On August 22, 1998, Snow learned that the photographs were being used in "Joyous Beginnings" when her sister purchased the product from WRS's website and recognized her in the presentation. After this discovery, Snow sent WRS a demand letter on January 5, 1999 ordering it to cease using and to return the photographs. On August 11, 2000, Snow filed a complaint in the Western District of

3

Texas against WRS and Palmo. She also filed an amended complaint on August 18, 2000 adding Ortega Recording Studios and John Ortega as defendants.[2] In this suit, she brought a copyright infringement claim and state law claims for intentional infliction of emotional distress, invasion of privacy, negligence, and conversion. She sought damages and an injunction against the further use of the photographs.

Snow did not immediately serve the amended complaints. On January 11, 2001, the district court, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure ("FRCP"), ordered her to show cause why the amended complaints should not be dismissed for want of prosecution. Snow filed a motion to enlarge the time for service, which the court granted, and on March 6, 2001, she served her amended complaints on the defendants.

On August 1, 2001, WRS moved for summary judgment on Snow's claims. The district court granted WRS's motion on December 26, 2001 and dismissed Snow's claims. In dismissing these claims, the district court held: (1) Snow did not possess a copyright in these photographs; (2) her state law claims were barred by the Oregon statute of limitations; and (3) WRS had not violated any duty in displaying the photographs. Snow has only appealed the district court's dismissal of the state law claims.

---

[2]    The district court dismissed Palmo, Ortega, and Ortega Recording Studios from the suit based on a lack of personal jurisdiction. Snow has not appealed this decision and these defendants are not parties on appeal.

4

Five days after the district court's decision, Snow filed suit in Texas state court bringing claims against WRS for invasion of privacy, intentional infliction of emotional distress, negligence, conversion, and civil conspiracy based on WRS's continued use of her photographs after Snow had terminated any previously given consent. On January 15, 2002, WRS filed suit in the Western District of Texas to enjoin the state court suit. WRS moved for summary judgment, which the district court granted on June 25, 2002. The court enjoined Snow from litigating any of her claims in the state court suit based on the re-litigation exception to the Anti-Injunction Act. Snow timely appealed, and on January 23, 2003, this court consolidated the two appeals.

## II. Analysis

Snow challenges both the dismissal of her state law claims on statute of limitation grounds and the injunction preventing her from litigating her claims in state court. Because both decisions were granted on summary judgment, we review them *de novo,* applying the same standards used by the district court. *See Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000).

A. *Statute of Limitations*

Snow contends that her state law claims were timely filed and thus should not have been dismissed by the district court. First, she argues that the district court erred by applying Oregon, rather than Texas or California, law to her claims. Second, she maintains

5

that even if Oregon law does apply, her claims were timely because her claims are continuing torts. Therefore, she argued the statute of limitations period did not begin to run until WRS stopped using the photographs. Finally, she argues that even if her claims are not continuing torts, the district court tolled the statute of limitations period when it granted an enlargement of time to serve her complaints. Because these arguments are ultimately without merit, we affirm the district court's decision to dismiss these claims.

(1) Choice of Law

Initially, Snow contends that Oregon law should not apply to her state law claims because Texas and California have more significant contacts with the litigation than Oregon. She argues that it is more significant to the choice-of-law analysis that the photographs were taken in California, were given to a California resident, and then marketed in Texas by a Texas corporation than the fact that she was injured in Oregon, established her relationship with WRS in Oregon, and was domiciled in Oregon. We disagree.

When a federal court is presented with state law claims pursuant to its diversity jurisdiction, the court will follow the conflict of law rules of the forum state. *See Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). This rule also applies to state law claims that, as here, are before the

6

federal court based on supplemental jurisdiction. *See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). Because suit was filed in a Texas federal court, the Texas conflict of law rules will apply to Snow's state law claims.

Texas uses the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979); RESTATEMENT (SECOND) OF CONFLICTS §§ 6, 145 (1969). Under the "most significant relationship" test, the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICTS § 145(1). Under this test, the contacts to be taken into account include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile and residence of the parties; and (4) the place where the relationship between the parties is centered. *Id.* § 145(2). But "[i]n situations involving the multistate publication of matter that ... invades [a] right of privacy, ... the place of the plaintiff's domicil[e]... is the single most important contact for determining the state of the applicable law." *Id.* § 145, cmt. f; *see also Wood v. Hustler Magazine*, 736 F.2d 1084, 1087 (5th Cir. 1984).

7

Our situation is similar to that in *Wood v. Hustler Magazine*, in which we applied the Texas conflicts rules to an invasion of privacy tort claim based on the unauthorized publication of explicit photographs. 736 F.2d at 1087. In *Wood*, the plaintiff, a Texas resident, had a number of private photographs that were stolen by a third party and published in the defendant's magazine, which was based in California. *Id.* at 1085-86. The court found that Texas law applied because the plaintiff resided in Texas, the injury occurred in Texas, and the relationship of the parties was centered in Texas, although the defendant, a California corporation, marketed the photographs from California. *Id.* at 1087.

Similar facts are present in this case. First, Snow has been an Oregon resident since 1983. Second, Snow's injury took place in Oregon because this is where she allegedly suffered emotional distress upon learning that WRS was marketing her photographs. Third, the relationship between Snow and WRS is centered in Oregon because Snow's only contact with WRS came from its marketing of her photographs on-line, which she discovered while in Oregon. Although the photographs were taken in California, were given to Palmo, a California resident, and were marketed in Texas by WRS, a Texas corporation, Oregon still has the most significant contacts with this litigation. Therefore, the district court properly applied Oregon law to Snow's state law claims.

(2) <u>Continuing Torts</u>

Snow next contends that even if Oregon law applies, her state law claims were timely filed because these claims were continuing torts. She maintains that as continuing torts, the statute of limitations period did not commence until WRS's tortious conduct ceased, which is when it stopped marketing her photographs. She argues that because WRS continued to market her photographs within two years of her commencing suit, her claims were timely. This argument is not persuasive.

Because Snow's state law claims are based on Oregon law, Oregon law will determine the applicable statute of limitations and whether the limitations period has been tolled. *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145-46 (5th Cir. 1997). Oregon has a two-year statute of limitations period for tort claims. OR. R.S. § 12.110. Under Oregon law, there are both filing and service requirements for commencing an action. *Id.* § 12.020. If the complaint is served within 60 days of suit being filed, then the action is considered commenced on the date of filing. *Id.* § 12.020(1). But if the complaint is served more than 60 days after filing, then the action is considered commenced on the date service is effected. *Id.* § 12.020(2).

Under Oregon law, the statute of limitations period begins to run when the cause of action accrues. *Duyck v. Tualatin Valley Irrigation District*, 742 P.2d 1176, 1181-82 (Or. 1987). A cause of action accrues when the plaintiff is able to sue upon the tort.

9

*Id.* at 1181. However, if the plaintiff is unaware that she has a cause of action, then the statute of limitations will not run until she knew or should have known of the injury. *Id.* at 1181-82.

The statute of limitations period for continuing torts also commences upon accrual. A continuing tort is a tort that requires the cumulative effect of the defendant's activities to give rise to a claim. *See Davis v. Bostick*, 580 P.2d 544, 547 (Or. 1978) (holding that recovery for a continuing tort "is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct."). Therefore, a plaintiff, who would otherwise not have a valid claim if the defendant's separate acts are considered in isolation, can bring suit if those acts are considered together. Because all of the defendant's acts are necessary to constitute the tort, the statute of limitations period does not commence until the last act is completed because this is the first time the plaintiff is able to bring a claim and thus when the claim accrues.

But that is not the case here. Snow cannot rely upon a continuing tort theory because no further acts were needed for the accrual of her action after she discovered that WRS was marketing her photographs on August 22, 1998. No others acts were necessary for her to bring invasion of privacy, negligence, and conversion claims once she learned that WRS had obtained and marketed her photographs. She was also able to sue upon her intentional infliction of emotional distress claim when she learned of WRS's

activities because that claim is based on her realization that the photographs were available to the general public. Therefore, the statute of limitations period for all of Snow's claims commenced no later than August 22, 1998.

Snow failed to serve either her original or amended complaint within 60 days of filing suit. Consequently, her action did not commence until March 6, 2001, when she served WRS with her suit. Because this was more than two years after Snow's claims had accrued, her claims are barred under the Oregon statute of limitations.

(3) <u>Grant of Enlargement of Time</u>

Snow next argues that even if the statute of limitations period commenced when she discovered WRS's activities, the district court tolled this period when it granted her an enlargement of time to serve her complaint. On January 23, 2001, the district court granted Snow's motion for enlargement of time to effectuate service based on FRCP Rule 4(m). Under this rule, if the complaint is not served within 120 days, the district court may either dismiss the complaint or order that service be effectuated by a certain date. FED. R. CIV. P. 4(m). Here, after Snow failed to serve either her complaint or amended complaint within 120 days of filing, the district court granted her an enlargement of time to serve the defendants and she complied. Snow maintains that the additional time the district court granted to serve her complaint extended the

60-day period in which to serve her claims under the Oregon statute.

This is incorrect. The district court's grant of an enlargement of time to serve the complaint under FRCP Rule 4(m) does not affect the Oregon statute of limitations period. State service requirements control unless they directly conflict with a federal rule. *Walker v. Armco Steel*, 446 U.S. 740, 752-53 (1980) ("In the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court."). Therefore, the application of the federal procedural rule will not affect any state service requirement unless the service requirement directly conflicts with that rule.

But Oregon's service requirement does not conflict with FRCP Rule 4(m) or any other federal rule. *See Torre v. Brickey*, 278 F.3d 917 (9th Cir. 2001); *see also Habermehl v. Potter*, 153 F.3d 1137 (10th Cir. 1998). "There is no conflict between Rule 4(m) and Oregon law because Rule 4(m) merely sets a *procedural* maximum time frame for serving a complaint, whereas [the Oregon statute] is a statement of substantive decision by that State that actual service on, and accordingly actual notice to, the defendant is an integral part of the several policies served by the statute of limitations." *Torre*, 278 F.3d at 919 (quoting *Habermehl*, 153 F.3d at 1139

12

(quotations omitted)). Therefore, the district court's grant of additional time under Rule 4(m) to serve her suit had no effect on the 60-day period to effectuate service under the Oregon statute. Accordingly, Snow's state law claims were untimely and we affirm the district court's dismissal of these claims.[3]

B. *State Court Suit Injunction*

Snow also contests the district court's decision to enjoin her from proceeding with her state court suit because this suit raises issues not addressed in the initial federal court litigation. Therefore, she maintains that an injunction is not proper under the Anti-Injunction Act. WRS counters that under the re-litigation exception to the Anti-Injunction Act the injunction was proper because the claims and underlying issues in Snow's state court suit were presented to and decided by the district court.

There are two separate issues involving WRS's marketing of Snow's photographs. The first issue is whether WRS had permission to publish Snow's photographs. If WRS could market Snow's photographs, then this affirmative defense will preclude Snow's

---

[3] Snow also argues that because the district court found in its December 26, 2001 order that Snow had no good cause for failing to timely serve the complaint, it was required under FRCP Rule 4(m) to dismiss her suit without prejudice. Therefore, the court could not reach the merits of her claims on summary judgment. However, even if Snow lacked good cause for the delay, it was still within the district court's discretion to allow the enlargement of time instead of dismissing the complaint. *See Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). Thus, Snow's argument is without merit.

state law claims. This issue focuses on whether Snow's husband, William Henry, gave Palmo consent to use the photographs in the "Joyous Beginnings" slide show and whether Palmo's representation to Childbirth Graphics that she had such consent sufficed to allow WRS to market the photographs without seeking Snow's express permission.

The second issue concerns whether consent, if given, was terminated prior to WRS's later publication. "A person who gives consent may terminate or revoke it at any time by communicating this revocation to those who may act upon the consent.... [O]nce the consent is withdrawn [the defendant] becomes liable for any act that would be tortious without consent." 1 DAN B. DOBBS, THE LAW OF TORTS § 104, at 244-45 (2001); *see* RESTATEMENT (SECOND) OF TORTS § 892A. This issue focuses on whether Snow terminated consent with her January 5, 1999 letter and whether WRS continued to market these photographs after Snow terminated consent. If so, then WRS could still be subject to liability even if it was not liable before the termination. Because they address different questions, emphasize different facts, and have different bases for liability, these two issues are clearly different.

Snow maintains that although the district court may have decided the first issue, it did not decide the second. Because this second issue formed the basis of her state court suit, she asserts that the re-litigation exception to the Anti-Injunction Act

could not be used to enjoin this state court suit.  We agree.

The Anti-Injunction Act prevents a federal court from granting an injunction to stay a state court proceeding except under certain limited circumstances.  28 U.S.C. § 2283.  The re-litigation exception is one of these circumstances and allows the federal court to grant an injunction in order "to protect or effectuate its judgments."  *Id.*  Its purpose is to "permit a federal court to prevent state litigation of an issue that was previously presented to and decided by the federal court."  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

In determining whether an issue has been presented to and decided by the district court, we apply a four-part test.  The suit may be enjoined only if: "(1) the parties in a later action must be identical to (or at least in privity with) the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits." *New York Life Ins. Co. v. Gillespie*, 203 F.3d 384, 387 (5th Cir. 2000).  In deciding whether to enjoin the state court proceedings, the emphasis is on the record and what the initial court stated, not on the subsequent court's *post hoc* assessment of what the previous judgment intended to say.  *Chick Kam Choo*, 486 U.S. at 148.  In addition, the issue must actually be raised in the

previous litigation. *Id.* It is irrelevant whether this claim merely could have been raised in the previous litigation. Finally, any doubts about the applicability of this exception are to be resolved in favor of allowing the state court action to proceed. *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 501 (5th Cir. 1988).

The only dispute here is whether the second issue identified by Snow has been presented to and decided by the district court in the initial suit. We find that it was not. Therefore, the district court improperly enjoined Snow's state court suit.

First, Snow never presented the issue of terminated consent to the district court. The term "terminated consent" or any language that WRS was liable to Snow for failing to cease the marketing of these photographs after receiving the demand letter is wholly absent from the complaint. WRS argues that Snow pleaded this issue when her first amended complaint stated: "Demand has previously been made on the Defendants to cease publication of the photographs, but no significant action has been taken to the best of the Plaintiffs knowledge." *8/18/2000 Amended Complaint*, at 4. But this factual statement, listed under the heading "Facts: Tort Claims," does not mean that Snow raised the issue. As Snow contends, the purpose of that statement was not to allege a claim for terminated consent, but to support her tort claim for conversion, in which she alleged that WRS has refused to return the

16

photographs, and her request for injunctive relief based on her copyright infringement claim. Therefore, this statement by itself is not sufficient to find that Snow presented the issue of terminated consent in the initial litigation.

This is further supported by the fact that Snow presented no evidence on summary judgment to support this issue. As WRS acknowledges, Snow never even introduced the January 5, 1999 demand letter sent to WRS. Because this piece of evidence is critical to proving that WRS continued to market her photographs after she expressly forbade them to do so, its absence provides strong evidence that the issue was not presented to the district court.

Second, even if Snow's brief statement in her complaint was sufficient to present the issue of terminated consent, this issue was never decided by the district court. WRS contends that the court's decision disposed of this issue when it stated: "Plaintiff's state tort claims are equally without merit as she identified no duty possessed or violated by WRS." *12/26/01 Order*, at 9. But when the statement is considered in context, it is clear that it only resolved the issue of whether WRS was liable for its actions before Snow sent the January 5 letter. After stating that Snow "identified no duty possessed," the district court went on to explain that WRS had no duty because Snow "has presented nothing that would put WRS on notice that Palmo's representation was not true or that it needed to make further inquiry into whether those depicted in the slide show had actually consented to have their

17

images displayed." From this statement it is clear that the court was only deciding whether WRS had a duty before Snow demanded that it cease marketing her photographs because the demand letter surely constituted such notice. Therefore, there is no evidence in the record to indicate that the district court decided that the letter did not terminate consent.[4]

Because the terminated consent issue was neither presented to nor decided by the district court, the state court suit cannot be enjoined under the re-litigation exception to the Anti-Injunction Act. Accordingly, we vacate its injunction.

### III. Conclusion

Because Snow's claims brought in federal court were barred by the Oregon statute of limitations, we AFFIRM the district court's grant of summary judgment as to these claims. But because the issue of terminated consent was neither presented to nor decided by the district court, we VACATE its injunction of the Texas state court proceeding, thus allowing the terminated consent claim to proceed in state court.

---

[4] WRS also argued that because the district court decided the duty issue, Snow's state court action could not prevail and thus the re-litigation exception applied because an essential element of her claims had already been determined. *See Next Level Communications v. DSC Communications Corp.*, 179 F.3d 244, 256-57 (5th Cir. 1999). But because the district court only addressed the duty issue with respect to WRS's actions before Snow terminated consent, this argument lacks merit.