Susan C. COLE, Plaintiff,

v.

**WELLS FARGO BANK, N.A., Defendants.**

No. 4:06–CV–00086–JEG.

United States District Court, S.D. Iowa, Central Division.

July 11, 2006.

---

Leanne M. Striegel, Des Moines, IA, for Plaintiff.

Kerrie M. Murphy, Gonzalez, Lora L. McCollom, Gonzalez, Saggio & Harlan, LLP, West Des Moines, IA, for Defendants.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Partial Motion to Dismiss (Clerk's No. 3). Plaintiff Susan C. Cole is represented by Leanne M. Striegel; Defendant Wells Fargo Bank, N.A. is represented by Lora L. McCollom. No hearing has been requested, and one is unnecessary to resolve the pending motion. This matter is fully submitted and is ready for disposition.

### FACTS[1]

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a federally-chartered national banking association and is a citizen of South Dakota.[2] Plaintiff Susan C.

---

1. The facts are harvested from the pleadings and cast in the light most favorable to Plaintiff.

2. Upon formation, a national banking association must, among other things, designate "[t]he place where its operations of discount and deposit are to be carried on." 12 U.S.C. § 22 (2000). The state in which this office is located serves as the "home state" of the association. *Id.* § 36(g)(3)(B); *see generally Wachovia Bank N.A. v. Schmidt,* 546 U.S. ——, —— n. 1, 126 S.Ct. 941, 945 n. 1, 163 L.Ed.2d 797 (2006). Wells Fargo's designated main office is Sioux Falls, South Dakota. National Banks Active As of 6/30/2006 35, *available at* http://

Cole resides in Iowa and is employed by Wells Fargo.

Cole began her employment at Wells Fargo as a tax representative in 1997. She was promoted to Underwriter I in June 2003. In October 2003, Cole began suffering panic attacks as a result of changes in certain medications Cole required. Cole informed her supervisor, Rebecca Jones, about these attacks. Later that month, Cole was contacted by a Wells Fargo physician, who recommended Cole be placed on leave until her response to her medications stabilized. Cole embarked on a period of leave, returning to Wells Fargo in November 2003. When she returned, she suggested several accommodations: she petitioned for a closer parking spot, requested to work on the first floor of the building, and asked to work from her home.

In December 2003, Jones suggested Wells Fargo purchase an armchair for Cole to use during her panic attacks and that Cole be permitted to work in a tall, secluded cubicle. Later that month, the armchair purchase was approved, and in January 2004, an armchair was placed in Cole's secluded cubicle. Cole claims Jones harassed her about the use of her chair, but she provides no factual details backing this allegation.

In August 2004, Wells Fargo reorganized the office where Cole worked. According to Cole, she was placed in the center of the workspace in a short cubicle surrounded by other workers. Jones told Cole the armchair would not "fit" in the reorganized space, so she would need to do her job without it. Cole complained she would be unable to work effectively without her armchair. Ken Roth, Cole's manager, told Cole she could work in a double cubicle with her armchair, but Jones had

disposed of the armchair "in such a way that it could not be placed in the center of the work space."

Also in August 2004, some of Cole's coworkers began to work flex schedules. Although Cole wished to attend work on such a schedule, she was told she needed a higher quality rating before becoming eligible for that benefit. Cole later learned others working flex schedules had lower quality ratings than her own.

In November 2004, Cole checked certain underwriting statistics and found errors in her reports. She reported these errors to Roth, who told her to speak with Jones. Cole complied. According to Cole, Jones advised her that if she corrected the errors, Jones would find more errors, so Cole was "better off" if the errors remained. Cole's filings are devoid of detail regarding what the alleged errors were or how Cole could conceivably benefit from their presence.

Sometime between November 2004 and January 2005, an individual with a lower quality rating than Cole's was promoted to Underwriter II. In January 2005, Cole met with Roth to discuss why she was not promoted. Roth told Cole she was not selected because of a poor assessment and told Cole she required additional training. The record contains little regarding Cole's work performance. The pleadings reflect that in December 2003, a Wells Fargo employee told Cole she "was having performance issues," but in September 2004, Cole earned an award for "quality." Cole requested a copy of the poor assessment from Roth and Wells Fargo's Human Resources department, but this request was purportedly denied.

www.occ.treas.gov/foia/nblist—Name—St—City—BankNet.pdf (last visited July 10, 2006). Consequently, Defendant is a South Dakota

citizen for jurisdictional purposes. *Wachovia Bank,* 546 U.S. at ——, 126 S.Ct. at 945.

Since she began working at Wells Fargo, Cole has converted to Judaism. On October 28, 2004, Cole asked Roth that she be permitted to arrive at and leave from work thirty minutes early on Fridays to attend services at her synagogue. Roth initially advised Cole he was unable to give a definitive answer, but Cole claims her request was eventually denied.

Cole filed a complaint with the Iowa Civil Rights Commission (ICRC) on May 2, 2005, and received an administrative release on January 9, 2006. Cole initiated this action in the Iowa District Court in and for Polk County in early 2006, and it was removed by Wells Fargo to this court on March 6, 2006.

The current version of Cole's Complaint contains four counts. Count 1 sets forth a disability discrimination claim, wherein Cole claims she was not promoted because of her penchant for panic attacks. In Count 2, Cole claims Wells Fargo denied her request to adjust her work schedule so she could attend religious services, amounting to a violation of the Free Exercise Clauses of the United States and Iowa constitutions.[3] Cole sets forth a tortious misrepresentation claim in Count 3. She alleges Wells Fargo employees informed her she "would need to reach level 4 performance in order to be promoted." She claims she "relied on [Wells Fargo]'s statements that she would be promoted if she performed the same job functions or at the same level as those who were promoted." In Count 4, Cole claims the occurrence of the tort of intentional infliction of emotional distress. She alleges "[t]he refusal to provide reasonable accommodations, the denial of a promotion, and the refusal to allow Cole to exercise her religion freely have resulted in the intentional infliction of mental distress. . . ."

Citing Federal Rule of Civil Procedure 12(b)(6), Wells Fargo moves to dismiss Count 4.[4] Wells Fargo argues Cole must succeed on her ICRA claim to prevail on her intentional infliction of mental distress claim. Consequently, Wells Fargo argues, Cole may seek redress only under the ICRA. Resisting, Cole only points out that her Complaint reproduces the elements of the tort of intentional infliction of emotional distress.

## DISCUSSION

### I. Wells Fargo's Motion to Dismiss.

Wells Fargo argues the ICRA preempts Cole's intentional infliction of mental distress claim, compelling dismissal of Count 4 of Cole's Complaint.

### A. Applicable Legal Principles.

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept

---

**3.** In many respects, Plaintiff's Complaint is either unclear or incomplete. Fundamentally, Cole does not specify the statutory basis for her disability discrimination claim. Cole has submitted an administrative release from the ICRC only, so the Court will construe Cole's disability discrimination claim as being brought under the Iowa Civil Rights Act (ICRA). Cole also fails to articulate the legal vehicle allowing her a remedy for any constitutional violations. Bound by the broadest possible reading of Cole's Complaint, the Court construes Cole's constitutional claims as alleged violations of the ICRA on religious discrimination grounds. These conclusions are compatible with Wells Fargo's understanding of Cole's claims. *See* Br. in Supp. of Def.'s Partial Mot. to Dismiss 2. The Court does not here address any impact this posture has on jurisdiction pursuant to 28 U.S.C. § 1331 but recognizes jurisdiction is also founded upon 28 U.S.C. § 1332.

**4.** Wells Fargo initially moved to dismiss Counts 1 and 2 as well, arguing Cole failed to demonstrate exhaustion of available administrative remedies pursuant to Iowa Code § 216.16. Wells Fargo has since withdrawn that portion of its motion.

as true factual allegations in the complaint and grant all reasonable inferences favorable to the nonmovant. *See Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir.2006); *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir. 2006); *In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir.2005); *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1062 (8th Cir.2005). A motion premised on this rule should only be granted in the " 'unusual case,' " *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir.2004) (quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995)), where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Knieriem*, 434 F.3d at 1060; *Mo. River Sys. Litig.*, 418 F.3d at 917; *Moses.com Sec.*, 406 F.3d at 1062. "At this stage of the proceedings, '[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Despite these benefits, a plaintiff's complaint must still contain allegations setting forth claims as a matter of law; conclusory allegations unanchored by specific factual assertions are insufficient to weather a Rule 12(b)(6) motion. *See Moses.com Sec.*, 406 F.3d at 1062; *Strand*, 380 F.3d at 317.

 Whether the ICRA preempts a tort claim is the proper subject of a motion to dismiss. *See, e.g., Canterbury v. Federal–Mogul Ignition Co.*, 418 F.Supp.2d 1112, 1117–19 (S.D.Iowa 2006); *Gauthier v. Waterloo Cmty. Sch. Dist.*, No. C05–2070, 2006 WL 463512, at *1–*2 (N.D.Iowa Feb.24, 2006); *Nuss v. C. Iowa Binding Corp.*, 284 F.Supp.2d 1187, 1202–04 (S.D.Iowa 2003); *Meyer v. Iowa Mold Tooling Co.*, No. C99–3087–MWB, 2000 WL 34031796, at *4–*7 (N.D.Iowa Aug.15, 2000); *Westin v. Mercy Med. Servs., Inc.*, 994 F.Supp. 1050, 1056–58 (N.D.Iowa 1998). Dismissing (or granting summary judgment on) intentional infliction of emotional distress claims on preemption grounds is neither uncommon, *e.g., Gauthier*, 2006 WL 463512, at *2 (granting motion to dismiss); *Napreljac v. Monarch Mfg. Co.*, No. Civ. 4–02–cv10075, 2003 WL 21976024, at *8 (S.D.Iowa May 27, 2003) (granting motion for summary judgment); *Martinez v. Cole Sewell Corp.*, 233 F.Supp.2d 1097, 1138–40 (N.D.Iowa 2002) (same); *Casey v. Riedel*, 195 F.Supp.2d 1122, 1135 (S.D.Iowa 2002) (same), nor automatic, *e.g., Fisher v. Elec. Data Sys.*, 278 F.Supp.2d 980, 995–96 (S.D.Iowa 2003) (granting in part and denying in part motion for summary judgment); *Perrigo v. Harveys Iowa Mgmt. Co.*, No. Civ. 1–99–cv–10003, 2000 WL 33363252, at *9 (S.D.Iowa Mar.14, 2000) (same).

**B. Preemptive Nature of the ICRA.**

 The Iowa Civil Rights Act of 1965, as amended, Iowa Code ch. 216 (2005), makes it unlawful for a "[p]erson . . . to discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the . . . religion[ ] or disability of such . . . employee, unless based upon the nature of the occupation," *id.* § 216.6(1)(a). To the extent this statute "provides a remedy for a particular discriminatory practice, its procedure is exclusive and the claimant asserting that practice must pursue the remedy it affords." *Smidt v. Porter*, 695 N.W.2d 9, 16 (Iowa 2005); *accord Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 857–58 (Iowa 2001); *Borschel v. City of Perry*, 512 N.W.2d 565, 567–68 (Iowa 1994); *Greenland v. Fairtron Corp.*, 500

N.W.2d 36, 38 (Iowa 1993); *Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 33 (Iowa 1991); *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 638 (Iowa 1990); *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 341–42 (Iowa 1989); *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 197 (Iowa 1985). The Iowa Supreme Court located this rule of exclusivity by examining what is now Iowa Code § 216.16(1). *See Northrup,* 372 N.W.2d at 196–97. That section provides, in relevant part, that

> "[a] person claiming to be aggrieved by an unfair or discriminatory practice *must* initially seek an administrative relief by filing a complaint with the commission in accordance with section [216.15]. A complainant *after the proper filing* of *a complaint with the commission,* may subsequently commence an action for relief in the district court. . . ."

*Id.* at 196 (quoting Iowa Code § 601A.16(1) (1983) (current version at Iowa Code § 216.16(1) (2005))) (emphases in the original). The court found it "clear" from this language that if the ICRA provided a remedy, a complainant must pursue it at the exclusion of others. *Id.* at 197; *accord Vaughn,* 459 N.W.2d at 638. Thus, common law tort claims predicated on the same operative facts as an ICRA claim are prohibited, but separate and independent claims may survive.

 To decide if preemption is appropriate, the Court must examine whether " 'in light of the pleadings, discrimination is made an element of' the [potentially preempted] claim." *Smidt,* 695 N.W.2d at 17 (quoting *Channon,* 629 N.W.2d at 857). In other words, "[i]f . . . success on the non-ICRA claims requires proof of discrimination, such claims are not separate and independent." *Channon,* 629 N.W.2d at 857 (citing *Greenland,* 500 N.W.2d at

38). Overlap extinguishes any common law tort claims. Preemption most obviously occurs if a plaintiff brings a tort claim supported by conduct also prohibited by the ICRA. *E.g., Smidt,* 695 N.W.2d at 17 (preemption appropriate when the pleadings "establish[ed] that the operative facts . . . giv[ing] rise to . . . claims under the ICRA [were] the same as those forming the basis for [a] proposed wrongful discharge claim"); *Greenland,* 500 N.W.2d at 38 (ICRA preempts an intentional infliction of emotional distress claim where "[d]iscrimination through sexual harassment is the 'outrageous conduct' " supporting the tort claim); *Grahek,* 473 N.W.2d at 34–35 (wrongful termination claim preempted where a plaintiff "essentially urge[d] that [he] was discharged because of his age"); *Hamilton,* 436 N.W.2d at 341–42 (preemption of a discharge in violation of public policy claim appropriate where the claim "boil[ed] down to an assertion of sex discrimination"); *Northrup,* 372 N.W.2d at 196–97 (ICRA preempts a discharge in violation of public policy claim where the plaintiff alleged he was discharged because he was an alcoholic, a theory available under the ICRA).

 Plainly, key to the analysis is how a tort claim is characterized in the pleadings. *See Smidt,* 695 N.W.2d at 17; *Channon,* 629 N.W.2d at 858. It is therefore necessary to compare the elements of Cole's intentional infliction of emotional distress claim to the elements of her ICRA claims, with an eye toward whether Cole uses the same factual allegations to support both.

## C. Elements of Cole's Claims.

### 1. Intentional Infliction of Emotional Distress Claim.

The analysis begins with Cole's intentional infliction of emotional distress claim. Preliminarily, the Court must first decide which state's law applies.

Wells Fargo contends in its removal papers that subject matter jurisdiction exists based on diversity of citizenship, *see* 28 U.S.C. §§ 1332(a)(1), 1348, and the existence of a federal question, *see id.* § 1331. Cole has not resisted these characterizations. If subject matter jurisdiction exists as a result of the presence of a federal question, the Court would exercise subject matter jurisdiction over Plaintiff's state-law claims based on principles of supplemental jurisdiction. *Id.* § 1367(a). If the parties are diverse, the Court would exercise original jurisdiction over Plaintiff's state-law claims. *Id.* § 1332(a). Iowa's choice of law rules apply in either instance.[5]

Iowa has adopted the "most significant relationship" test to guide choice of law decisions in tort cases. *See Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897–98 (Iowa 1996) (adhering to Restatement (Second) Conflict of Laws §§ 6, 145 (1971)); *accord Jackson v. Travelers Ins. Co.*, 26 F.Supp.2d 1153, 1159 & nn. 9–10 (S.D.Iowa 1998); *Goetz v. Wells Ford Mercury, Inc.*, 405 N.W.2d 842, 843 (Iowa 1987); *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348–49 (Iowa 1973). Under this test, the Court must balance a number of factors, *see* Restatement (Second) Conflict of Laws §§ 6(2), 145, and then " 'apply the policy of the state with the most interest in the litigants and the outcome of the litigation,' " *Veasley*, 553 N.W.2d at 897 (quoting *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968)). The conduct giving rise to this litigation allegedly occurred in Iowa and involves an Iowa resident. The parties have not identified a state with an interest in this litigation other than Iowa. Consistent with the parties' implicit assumptions in their filings, the Court concludes Iowa law controls Cole's tort claims.

A plaintiff must prove the following elements to succeed on an intentional infliction of emotional distress claim under Iowa law: " '(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional dis-

---

**5.** If subject matter jurisdiction rests on 28 U.S.C. § 1332(a)(1), Iowa's choice of law rules apply. 28 U.S.C. § 1652; *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that a forum state's choice of law rules apply in diversity actions); *accord Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 877–78 (8th Cir.2006); *DCS Sanitation Mgmt., Inc. v. Casillo*, 435 F.3d 892, 895 (8th Cir.2006). Although our circuit has not directly ruled on the issue, *but see Catipovic v. Peoples Cmty. Health Clinic, Inc.*, 401 F.3d 952, 957 n. 2 (8th Cir.2005) (applying Iowa law in a case where the plaintiff "originally filed a complaint . . . alleging breach of several federal statutes"), other circuits have uniformly decided that if subject matter jurisdiction rests on 28 U.S.C. § 1331, a district court should apply the forum state's choice of law rules when deciding choice of law questions on supplemental state-law claims. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C.Cir.2006); *Snow v. WRS Group, Inc.*, 73 Fed.Appx. 2, 5 (5th Cir.2003); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir.1999); *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir.1999); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir.1999); *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir.1998); *Dykes v. DePuy, Inc.*, 140 F.3d 31, 39 (1st Cir.1998); *see generally Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir.1986) (collecting cases). Both districts in Iowa have recognized this rule. *See WINBCO Tank Co. v. Palmer & Cay of Minn., L.L.C.*, 435 F.Supp.2d 945, 949, 2006 WL 1731139, at *1 n. 2 (S.D.Iowa 2006) (Bremer, Mag. J.); *Lyons v. Midwest Glazing*, 265 F.Supp.2d 1061, 1071–72 (N.D.Iowa 2003) (applying forum state's choice of law rules to supplemental claims).

tress.'" *Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004) (quoting *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997)); *accord Eckles v. City of Corydon*, 341 F.3d 762, 769–70 (8th Cir.2003) (applying Iowa law); *Varboncoeur v. State Farm Fire & Cas. Co.*, 356 F.Supp.2d 935, 945 (S.D.Iowa 2005) (same); *Fisher*, 278 F.Supp.2d at 995 (same); *see also* Iowa Civ. Jury Instruction 2000.1 (1993) (collecting cases); Restatement (Second) of Torts § 46 (1965), *quoted in Beneficial Fin. Co. of Waterloo v. Lamos*, 179 N.W.2d 573, 582 (Iowa 1970).

Focusing on the first element, the "outrageous conduct" alleged here consists of three factual allegations: (1) Wells Fargo's refusal to provide reasonable accommodations, (2) Wells Fargo's decision not to promote Cole, and (3) Wells Fargo's refusal to allow Cole to freely exercise her religion. *See* Am. Compl. ¶ 64; *see also* Pl.'s Br. in Supp. of Resist. to Def.'s Partial Mot. to Dismiss 3 (identifying portions of the Complaint containing conduct Cole alleges to be outrageous).

### 2. ICRA Claims.

Giving Cole's Complaint its broadest possible reading, Cole alleges Wells Fargo violated the ICRA in two different ways.

### a. Disability Discrimination.

First, Cole claims Wells Fargo violated the ICRA by refusing to promote her as a result of her propensity to have panic attacks. She also claims Wells Fargo violated by the ICRA by refusing to provide reasonable accommodations to allow her to perform her job responsibilities in spite of her alleged disability. *See* Pl.'s Br. in Supp. of Resist. to Def.'s Partial Mot. to Dismiss 2.

▋▋▋ The elements of a *prima facie* case for disability discrimination under the ICRA are well established. To succeed, a plaintiff must show "(1) he or she is a disabled person; (2) he or she is qualified to perform the job, with or without an accommodation; and (3) he or she suffered an adverse employment decision because of the disability." *Casey's Gen. Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519 (Iowa 2003); *accord Schlitzer v. Univ. of Iowa Hosps. & Clinics*, 641 N.W.2d 525, 530 (Iowa 2002); *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 60 (Iowa 1999); *Boelman v. Manson State Bank*, 522 N.W.2d 73, 79 (Iowa 1994).[6]

### b. Religious Discrimination.

▋▋▋ Wells Fargo also allegedly violated the ICRA by failing to accommodate Cole's religious beliefs by not allowing her to adjust her work schedule. ICRA religion discrimination cases advanced on a failure to accommodate theory require a plaintiff to show

(1) that he or she had a bona fide belief that compliance with an employment requirement would be contrary to his or her religious belief or practice; (2) that he or she informed the employer about the conflict; and (3) that he or she was discharged or penalized for failing to comply with the conflicting employment requirement.

*King v. Iowa Civil Rights Comm'n*, 334 N.W.2d 598, 601–02 (Iowa 1983); *see also Jones v. TEK Indus., Inc.*, 319 F.3d 355, 358–59 (8th Cir.2003) (Title VII); *Cruzan v. Special Sch. Dist. No. 1*, 294 F.3d 981,

---

**6.** ICRA disability discrimination claims are guided by federal cases interpreting the Americans with Disabilities Act of 1990(ADA), Pub.L. No. 101–336, 104 Stat. 327 (codified as amended at 42 U.S.C. §§ 12101–213). *See, e.g., Canny v. Dr. Pepper/Seven–Up Bottling Group, Inc.*, 439 F.3d 894, 900 n. 3 (8th Cir.2006); *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 n. 3 (8th Cir.2005); *Simonson v. Trinity Reg'l Health Sys.*, 336 F.3d 706, 709 (8th Cir.2003); *Blackford*, 661 N.W.2d at 519; *Schlitzer*, 641 N.W.2d at 529.

983 (8th Cir.2002) (per curiam) (Title VII); *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir.1997).[7] Assuming a plaintiff can marshal facts to prove these elements, an employer must "articulate or introduce evidence to show that he could not accommodate the employee's beliefs" unless such an accommodation would cause the employer some species of undue hardship. *King*, 334 N.W.2d at 602; *accord Frank v. Am. Freight Sys., Inc.*, 398 N.W.2d 797, 803 (Iowa 1987) (dicta); *see also Phillips v. Collings*, 256 F.3d 843, 850 (8th Cir.2001) (Title VII); *Brown v. Polk County*, 61 F.3d 650, 654–55 (8th Cir.1995) (Title VII).[8]

### D. Analysis.

 The core issue is whether Cole must prevail on her ICRA claims in order to succeed on her intentional infliction of emotional distress claim. Resolving this question depends on whether overlap exists between the allegations used to support both types of claims. As noted above, the facts cantilevering Cole's tort claim are trine: (1) Wells Fargo's refusal to allow her to freely exercise her religion; (2) Wells Fargo's refusal to provide reasonable accommodations, and (3) Wells Fargo's decision not to promote her.

### 1. Alleged Refusal to Permit Cole to Freely Exercise Her Religion.

Comparing two parts of Cole's Amended Complaint disposes of the first ground

upon which her tort claim rests. In the portion of her Complaint devoted to her religious discrimination claim, Cole alleges,

55. [Cole] requested that [Wells Fargo] allow her to come to work one-half hour early and to leave work on Fridays one-half hour early, so that she could attend synagogue.

56. [Cole]'s supervisor . . . stated that he would look into it.

. . . . .

58. [Cole]'s supervisor . . . did not grant [her] request to leave work one-half hour early, violating her rights to free exercise of religion.

Am. Compl. ¶¶ 55–58. The portion of Plaintiff's Complaint addressing her intentional infliction of emotional distress claim uses similar language:

64. The refusal to . . . allow [Cole] to exercise her religion freely ha[s] resulted in the intentional infliction of mental distress. . . .

*Id.* ¶ 64.

As pled, paragraph 64 assumes Cole was denied the ability to freely exercise her religion, and alleges such a denial caused mental distress. It follows that she must prove religious discrimination occurred before relying on such discrimination to form the basis of her emotional distress claim. Consequently, Cole may not rely on any purported free exercise violations to support her tort claim.

7. ICRA religious discrimination is guided by federal cases interpreting section 703(a)(1) of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 241, 255 (codified at 42 U.S.C. § 2000e–2(a)(1)). *King*, 334 N.W.2d at 601.

8. Although the text of the ICRA does not require accommodation of employees' religious practices, the Iowa Supreme Court has read into Iowa Code § 216.6(1)(a) "the duty to accommodate . . . in the alleged religious discrimination context." *King*, 334 N.W.2d at 602 n. 1. This conclusion is based on the

presence of language in amendments to the Civil Rights Act of 1964 requiring reasonable accommodation of an employee's religious practices. *See* Pub.L. No. 92–261, 86 Stat. 103, 103 (1972) (codified at 42 U.S.C. § 2000e(j)) (defining "religion" as including "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business").

### 2. Alleged Refusal To Provide Reasonable Accommodations to Cole.

Cole's second ground for her intentional infliction of emotional distress claim may even more readily be resolved. Cole pleads,

> 50. A person that was less skilled, less experienced, and received lower performance reviews [than Cole] was promoted....
>
> 51 [Wells Fargo] failed to promote [Cole] ... because of [her] disability.
>
> . . . . .
>
> 55. [Cole] requested that [Wells Fargo] allow her to come to work one-half hour early and to leave work on Fridays one-half hour early, so that she could attend synagogue.
>
> . . . . .
>
> 57. [Cole]'s supervisor ... asked [Cole] inappropriate questions when [Cole] asked for this accommodation.
>
> 58 [Cole]'s supervisor ... did not grant [her] request to leave work one-half hour early....

*Id.* ¶¶ 50–51, 55, 57–58. When addressing allegations of intentional infliction of emotional distress, Cole pleads,

> 64. The refusal to provide reasonable accommodations ... ha[s] resulted in the intentional infliction of mental distress....

*Id.* ¶ 64.

Paragraph 64 suggests Wells Fargo's refusal to accommodate either Cole's alleged disability or her religious practices led to mental distress. Remedying the failure to accommodate an individual's disability where such an accommodation is required is the pith of ICRA disability discrimination claims. *See Blackford,* 661 N.W.2d at 519 (requiring proof that an employee "is qualified to perform the job, with or without an accommodation" as part of an ICRA disability discrimination claim). And to successfully defend an ICRA religious discrimination claim, an employer must show a failure to accommodate is alternative to some undue hardship. *See King,* 334 N.W.2d at 601–02 & n. 1.

Under either theory, the lack of an accommodation is an element of Cole's ICRA claim. Therefore, for Cole to have suffered emotional distress resulting from Wells Fargo's failure to accommodate the exercise of her religion or her alleged disability, she must succeed on her ICRA claim. Consequently, preemption principles forbid her from advancing a tort claim on any alleged failure to accommodate.

### 3. Alleged Failure to Promote Cole.

Finally, Cole alleges she suffered emotional distress because she was not promoted. Am. Compl. ¶ 64. She also uses this allegation to support her disability discrimination claim. *Id.* ¶ 51.

Of course, being denied a promotion can suffice to sustain a disability discrimination action. *See* 42 U.S.C. § 12112 (prohibiting discrimination "in regard to job application procedures, the hiring, *advancement,* or discharge of employees...."). At issue is whether the denial of a promotion also serves to support Cole's intentional infliction of emotional distress claim.

Where intentional infliction of emotional distress claims have been permitted alongside disability discrimination claims, plaintiffs typically avoid preemption by cocooning the activity allegedly causing mental harm within another tort, or by supporting the tort claim by allegations of conduct not swept within that class of conduct the ICRA forbids. *See Fisher,* 278 F.Supp.2d at 995 (preemption not required when intentional infliction of emotional distress claim arises from an alleged assault or battery); *Weems v. Federated Mutual Ins. Co.,* 220 F.Supp.2d 979, 995–96 (N.D.Iowa 2002) (Melloy, J.) (intentional infliction of emotional distress claim is not preempted

where a strip search "could be construed neutrally as [being designed] to intimidate and prevent the employee from making an incriminatory record regarding a prior alleged assault"); *Perrigo,* 2000 WL 33363252, at *8–*9 (preemption improper where a defendant's "conduct in allegedly assaulting plaintiff could support a claim for intentional infliction of emotional distress independent of a finding of discrimination"). On the other hand, if allegations supporting an ICRA claim are identical to or include those supporting the intentional infliction of emotional distress claim, preemption is required. *See Greenland,* 500 N.W.2d at 37–38 & n. 3 (intentional infliction of emotional distress claim preempted where it is dependent upon the same "crude and demeaning language" and other conduct forming the basis of plaintiff's ICRA claim).

Cole claims she was not promoted as a result of her disability. That is the sole adverse employment action she alleges Wells Fargo took. *See* Am. Compl. ¶ 51. It follows that if she cannot prove she was not promoted as a result of an alleged disability, she will not succeed on her ICRA disability discrimination claim. As illustrated by contrasting the preceding cases, rooting a tort claim by a fact upon which the vitality of an ICRA claim also depends is fatal to the tort claim. As a result, Cole may not rely on the denial of a promotion to support her intentional infliction of emotional distress claim.

Each of the components of the factual colonnade undergirding Cole's intentional *infliction* of emotional distress claim is dependent upon her ability to prove discrimination of one kind or another. The obverse is also true: Cole relies on no factual assertion to support her intentional infliction of emotional distress claim unchained by the prerequisite of proof of discrimination. As a result, Cole's intentional infliction of mental distress claim is preempted by the ICRA. Consequently, that count of Cole's Complaint must be dismissed.

This conclusion does not prevent Cole from seeking emotional distress damages under a different theory. The ICRA, for example, permits recovery of emotional distress damages in some circumstances without proof of outrageous conduct, severe distress, or physical injury. *See City of Hampton v. Iowa Civil Rights Comm'n,* 554 N.W.2d 532, 536–37 (Iowa 1996); *Greenland,* 500 N.W.2d at 39 n. 6; *Lynch v. City of Des Moines,* 454 N.W.2d 827, 835 (Iowa 1990); *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 525–26 (Iowa 1990). The availability of such damages, of course, does not guarantee their recovery.

## II. Conclusion.

Wells Fargo's Partial Motion to Dismiss (Clerk's No. 3) must be **granted.** Count 4 of Cole's Complaint is **dismissed.**

**IT IS SO ORDERED.**