*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0564**

Roula Mitchell,
Appellant,

vs.

Target Corporation,
Respondent.

**Filed March 25, 2024**
**Affirmed**
**Schmidt, Judge**

Hennepin County District Court
File No. 27-CV-21-14947

Alicia L. Anderson, Law Office of Alicia L. Anderson, Edina, Minnesota; and

Joshua Williams, Law Office of Joshua R. Williams, PLLC, Minneapolis, Minnesota (for appellant)

Christopher T. Ruska, Katie M. Connolly, Nilan Johnson Lewis PA, Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Wheelock, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant challenges the summary-judgment dismissal of her claim of reprisal under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.50 (2022 & Supp. 2023). Appellant argues the district court erred by determining that no genuine

issues of material fact existed and by ruling that appellant, as a matter of law, could not prove the causation or pretext elements for her MHRA claim. Because no genuine issues of material fact exist and respondent had a good-faith belief that appellant engaged in conduct that violated the company's harassment-free workplace policy, we affirm.

## FACTS[1]

Appellant Roula Mitchell had worked for respondent Target Corporation for over 15 years. By all accounts, Mitchell had been a good employee, receiving positive performance reviews and promotions. During a night shift, Mitchell told her manager that a coworker, A.W., made a sexualized comment to her. Mitchell did not want her manager to report the incident to human resources (HR), but the manager told Mitchell he was obligated to do so. The manager called A.W. into his office and asked if A.W. had said something inappropriate. A.W. admitted making the comments and the manager sent him home and provided a detailed report to HR.

The next day, an HR representative investigated the incident, pursuant to company policy to "conduct a fair, timely, impartial, and thorough investigation." Target's Harassment-Free Workplace Policy provided a non-exhaustive list of behaviors that may violate the policy. If an investigation revealed a violation occurred, the policy required Target to "take prompt and appropriate remedial measures, including corrective action, up to and including immediate termination."

---

[1] Consistent with the standard of review, our recitation of the facts includes "the evidence in the light most favorable to the nonmoving party"—here Mitchell—"and we do not weigh facts or make credibility determinations." *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 228 (Minn. 2020).

2

The HR investigator separately interviewed Mitchell and A.W. Mitchell reiterated her allegations against A.W. The HR investigator then interviewed A.W., who again admitted making the inappropriate comments and added that the nature of his relationship with Mitchell included such banter. A.W. noted that Mitchell would ask him, an openly gay man, about anal intercourse, ask sexually related questions, and make comments of a sexual nature. A.W. described to the HR representative some of the sexually charged statements that Mitchell had made to him. Mitchell denied engaging in any sexually explicit conversation.

The HR investigator also interviewed T.B., a Target employee who regularly worked with both A.W. and Mitchell. T.B. confirmed that A.W. and Mitchell frequently engaged in sexual conversations with one another. T.B. told the investigator she was used to it and had not complained or reported the conduct because it did not bother her.

The HR investigator corroborated Mitchell's allegations that A.W. made sexual comments in violation of company policy through interviews with Mitchell, A.W., and T.B. The HR investigator also corroborated A.W.'s allegations that Mitchell had made sexually charged comments to A.W. in violation of company policy through the interview with T.B. The investigator determined that both Mitchell and A.W. engaged in conduct that violated the harassment-free workplace policy and discharged both employees.

Mitchell acknowledged that she knew of Target's policy and that a violation could lead to termination. HR representatives informed Mitchell of Target's internal appeal process, but Mitchell declined to appeal the termination decision through that process.

Mitchell sued Target, alleging reprisal in violation of the MHRA under Minn. Stat. § 363A.15. Target moved for summary judgment, which Mitchell opposed. In ruling on the motion, the district court determined that Mitchell failed to show causation between her protected conduct and her termination. The court also determined that Mitchell failed to show Target's legitimate reason for her termination constituted pretext for reprisal. Accordingly, the district court granted Target's motion for summary judgment, dismissed Mitchell's complaint, and entered judgment in Target's favor.

Mitchell appeals.

## DECISION

Mitchell challenges the summary-judgment ruling Target's favor. We review an order granting summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court misapplied the law. *Kenneh*, 944 N.W.2d at 228. We view the evidence in the light most favorable to the nonmoving party. *Id.*

Generally, employment relationships in Minnesota are "at-will," such that "an employer may discharge an employee for any reason or no reason" and an employee has "no obligation to remain on the job." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014) (quotations omitted). "But there are statutory exceptions to the employment-at-will doctrine that prevent an employer from discharging an employee for improper reasons." *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 372 (Minn. 2022). For example, the MHRA prohibits an employer from engaging in reprisal because the employee opposed a practice forbidden by the statute. *See* Minn. Stat. § 363A.15.

MHRA reprisal claims that do not involve direct evidence of discriminatory animus are analyzed under the *McDonnell Douglas* burden-shifting test. *See Hoover v. Norwest Priv. Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff must establish a prima facie case for reprisal by showing: (1) the employee engaged in statutorily protected conduct; (2) the employer committed an adverse employment action against the employee; and (3) a causal connection between the two. *Id.* at 548. If the plaintiff establishes a prima facie case of discrimination, "the burden of production then shifts to the [employer] who . . . must produce admissible evidence sufficient to allow a reasonable trier of fact to conclude there was a legitimate, nondiscriminatory reason for the discharge." *Id.* at 542. If the employer articulates such a reason, "the plaintiff has the burden of establishing that the employer's proffered reason is a pretext for discrimination." *Id.*

Mitchell asks this court to reverse the summary-judgment dismissal of her complaint and remand for a trial, raising three arguments: (1) the district court erred in concluding she failed to present evidence sufficient to satisfy the causation element of a prima facie case for reprisal; (2) the district court misapplied the summary-judgment standard when concluding Target provided a legitimate, nondiscriminatory reason for the discharge; and (3) the district court erred in concluding as a matter of law Target's stated reason for termination was not pretext for discrimination. We address each argument in turn.

**I.**   **The district court did not err in concluding that Mitchell could not present evidence sufficient to establish the causation element for her reprisal claim because the intervening unprotected conduct that justified her termination soundly rebuts a retaliatory motive.**

Mitchell argues the district court erred in concluding she failed to establish a causal connection between her protected conduct and her termination. A "causal connection may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983). Although temporal proximity may establish a causal connection, "the presence of intervening events undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity." *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 698 (8th Cir. 2006).[2]

To argue for reversal, Mitchell cites only to the temporal proximity between her protected conduct and her termination. But, as an initial matter, "[t]emporal proximity alone is not sufficient for an employee's claim to proceed to trial[.]" *Hanson*, 972 N.W.2d at 376. Without more, Michell's claim must fail.

Mitchell argues *Hubbard* requires reversal because the Minnesota Supreme Court held that a termination two days after an employee engaged in protected activity satisfies the causation element. *Hubbard*, 330 N.W.2d at 445-46. Mitchell overstates the holding

---

[2] Given the similarity in language and purposes of the statutes, the Minnesota Supreme Court in construing the MHRA has applied federal law arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e (1976). *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

6

in *Hubbard*.  Although the supreme court agreed that plaintiff had made a prima facie case given the temporal proximity, the court concluded that the inference of a retaliatory motive due to the timing of the discharge had been "soundly rebutted[.]" *Id.* at 446.

We agree with the district court's well-reasoned order that the "intervening unprotected conduct" justified her termination.  The sequence of events in this case undermined any causal inference that could have been drawn from the temporal proximity. *Freeman*, 467 F.3d at 698; *see also Mervine v. Plant Eng'g Servs., LLC*, 859 F.3d 519, 527 (8th Cir. 2017) ("Whatever causal inference that might have been drawn from the temporal proximity between [the employee's] protected activity and the termination of his employment was vitiated by the intervening, later-corroborated employee complaints, as well as by the later-discovered additional misconduct.").  The undisputed facts demonstrate that Target's HR investigator learned that Mitchell engaged in conduct in violation of Target's harassment-free workplace policy.  HR investigated the veracity of the conduct and corroborated the allegations in an interview with another employee, T.B., who often worked with Mitchell and A.W.  T.B., whom the HR investigator believed to be credible, confirmed that Mitchell and A.W. both made sexual comments to each other.  Thus, any inference of causation created through the temporal proximity between Mitchell's protected conduct and her termination was cut off by Target's investigation and determination that Mitchell violated the company's harassment-free workplace policy. *See Hanson*, 972 N.W.2d at 375 (holding that employee's conduct "cut off any reasonable inference of a connection between her protected reporting and her eventual termination").

**II.** **The district court properly applied the summary-judgment standard when analyzing Target's stated reason for terminating Mitchell.**

Mitchell argues the district court ignored evidence that Target's sole stated reason for terminating Mitchell was that she violated a zero-tolerance policy. Mitchell argues that Target should have, at best, gave her a warning given her positive work history because Target's policy does not explicitly state "zero tolerance" for this conduct. We disagree.

Target's HR representative investigated the incident pursuant to company policy to "conduct a fair, timely, impartial, and thorough investigation" when Target "becomes aware of potential misconduct[.]" Target's Harassment-Free Workplace Policy provides a non-exhaustive list of behaviors that may violate the policy—which includes "[m]aking repeated jokes or suggestive remarks of a sexual nature" and "making graphic comments about an individual's body." The policy further provided that if an investigation reveals that a violation occurred, "Target will take prompt and appropriate remedial measures, including corrective action, up to and including immediate termination." Although not entitled "zero-tolerance," the policy shows that Target has zero tolerance for sexual discrimination as the policy states "Target is committed to a workplace free from harassment," which includes sexually harassing conduct.

Mitchell also challenges Target's investigation for being incomplete and biased. Here, the HR representative corroborated the allegation against Mitchell and found the employee's recitation of Mitchell's conduct to be credible. As the Eighth Circuit Court of Appeals has held, "we do not sit as a super-personnel department" to question whether an investigation should have been handled differently. *Greer v. St. Louis Reg'l Med. Ctr.*,

258 F.3d 843, 847 (8th Cir. 2001).[3] Mitchell's assertion of a biased investigation—because the HR investigator did not know Mitchell as well as she knew A.W. and T.B.—also fails because the argument ignores that Target terminated *both* Mitchell and A.W. for similar misconduct. Mitchell received the "fair, timely, impartial, and thorough investigation" that Target's policy promised.

**III.** **The district court did not err in concluding that Mitchell did not establish that Target's proffered reason for her termination was pretext for discrimination.**

Mitchell argues the district court further erred in concluding she failed to show Target's proffered reason for the termination was pretextual. We disagree.

The district court properly concluded there is no genuine issue of material fact on the question of "whether Target, through its agent, in good faith believed Mitchell was guilty of the conduct justifying discharge." Mitchell points to no material fact to dispute that the HR investigator believed, in good faith, that Mitchell made comments prohibited by Target's harassment-free workplace policy. Mitchell's claims of pretext are rooted in her contention that she did not make sexually inappropriate comments. But Mitchell's belief about her conduct is immaterial to the issue. The relevant question is whether Target had a good-faith belief that Mitchell committed the conduct justifying termination. *See McCullough v. Univ. of Ark. For Med. Scis.*, 559 F.3d 855, 861-62 (8th Cir. 2009) ("The critical inquiry in discrimination cases like this one is not whether the employee actually

---

[3] Although not binding on Minnesota state courts, this case is referenced for its persuasive value. *See State v. Eichers*, 840 N.W.2d 210, 216 (Minn. App. 2013), *aff'd on other grounds*, 853 N.W.2d 114 (Minn. 2014).

9

engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.").

Mitchell takes issue with the district court's reliance on the federal "honest belief" doctrine. But the Minnesota Supreme Court has adopted the same basic test. Instead of asking whether the employer has an honest belief in the information on which the employer relied for termination, Minnesota courts ask whether the employer's proffered explanation is worthy of credence. *Lamb v. Village of Bagley*, 310 N.W.2d 508, 510 (Minn. 1981) (holding plaintiff must demonstrate "the [employer's] proffered explanation is unworthy of credence"); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986) (same); *Shockency v. Jefferson Lines*, 439 N.W.2d 715, 719-20 (Minn. 1989) (same). The tests have different titles but are functionally the same.

Target's proffered explanation for terminating Mitchell (and A.W.)—violating Target's harassment-free workplace policy—was worthy of credence because the investigation produced information that Mitchell violated Target's policy. In addition, there is no evidence in this record that Target deviated from its policy, which explicitly prohibited the conduct that the HR investigator believed occurred. *See Jefferson Lines*, 439 N.W.2d at 720 (noting that "[i]t is [a company's] treatment of all its employees that must be considered" in determination of pretext). We conclude that the district court properly granted summary judgment.

**Affirmed.**

10